LAW OFFICES OF JOSEPH K. JONES, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile

*Attorneys for Plaintiffs Lesley McCarthy and Kim Kennedy, on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLEY MCCARTHY and KIM KENNEDY on behalf of themselves and all others similarly situated,<br><br>        Plaintiff(s),<br><br>        -against-<br><br>EQUINOX HOLDINGS, INC., JOHN DOES 1-25,<br><br>        Defendant(s). | Civil Case Number: _____<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL** |

**PLAINTIFFS,** LESLEY MCCARTHY and KIM KENNEDY on behalf of themselves and all others similarly situated (hereinafter "Plaintiffs") by and through their undersigned attorneys, alleges against the above-named Defendants, EQUINOX HOLDINGS, INC., (hereinafter "Equinox") and JOHN DOES 1-25 (collectively "Defendants") the following:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action as a class action, on behalf of themselves and all other New Jersey consumers similarly situated, relating to Defendants' violations of the Health Club Services Act, N.J.S.A. 56:8-39 *et seq.* ("HCSA"), the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA"); the Retail  Installment Sales Act, N.J.S.A. 17:16C-1, *et seq.* ("RISA"), the Truth in

Lending Act (TILA), 16 U.S.C. 1601 *et seq.* and Regulation Z, and the Truth-in-Consumer Contract, Warranty and Notice Act, <u>N.J.S.A.</u> 56:12-14, *et seq*. ("TCCWNA").

2. Defendants have violated the HCSA by using Membership Agreements which (1) obligate their customers to automatically and perpetually renew their contracts by imposing unreasonable and unduly onerous requirements to cancel their gym memberships; (2) fail to conspicuously state their customers' total payment obligations for the health club services to be received; and (3) fail to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

3. Defendants have violated the CFA by their cancellation policies and billing practices, which have the primary and/or sole purpose of discouraging and impeding their customers from canceling what are otherwise perpetual and automatically self-renewing monthly memberships.

4. Defendants have violated the Truth in Lending Act (TILA), 16 U.S.C. 1601 *et seq.* and Regulation Z by using Membership Agreements which fail to provide in a clear and conspicuous tabular form the mandatory account-opening disclosures for an open end credit plan.

5. Defendants have violated the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") by using Membership Agreements which (1) state that its provisions are and/or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; and (2) violate the HCSA, the CFA , RISA or TILA and Regulation Z.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

    a.    The Plaintiffs are citizens of New Jersey and Defendant is a based in New York.

    b.    The aggregate amount in controversy exceeds $75,000.00 exclusive of interest and costs because Defendant entered into over 2,000 Membership Agreements within the proposed class period, and Plaintiffs seeks, *inter alia*, statutory damages of a minimum of $100 per violative Membership Agreement under TCCWNA;

**PARTIES**

7. Plaintiff, Lesley McCarthy ("McCarthy") is a natural person and a resident of the County of Union, State of New Jersey.

8. Plaintiff, Kim Kennedy ("Kennedy") is a natural person and a resident of the County of Union, State of New Jersey.

9. Defendant, Equinox Holding, Inc.  ("Equinox") is a Delaware corporation with its principal place of business at 895 Broadway, New York, NY 10003.

10. John Does 1-25, are fictitious names of individuals and business alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made parties to this action.

**STATEMENT OF FACTS**

11. Plaintiffs and all others similarly situated are buyers of health club services.

12. Equinox, owns and operates fitness and health clubs (hereinafter "Clubs") in the United States.

13. Equinox, owns and operates Clubs in Summit, and Paramus, New Jersey

14. Equinox, either individually and/or jointly, at the New Jersey Clubs, devote 40% or more of their square footage to providing services and/or facilities for the preservation, maintenance, encouragement or development of physical fitness or physical wellbeing.

15. Equinox, either individually and/or jointly, provided Plaintiffs with services and/or facilities for the preservation, maintenance, encouragement or development of physical fitness or physical wellbeing.

16. Equinox, through its directors, executives, management, agreements and/or operations manuals, sets, controls and/or directs the policies, practices and procedures used by all of its Clubs and/or plays an active role in the operation of each Club in the State of New Jersey.

17. Equinox used the same and/or substantially similar Membership Agreements in the New Jersey Clubs, as the Membership Agreements used by Equinox in its respective transactions with Plaintiffs to enroll other persons in club memberships.

### Membership Agreement
### (As to Plaintiff McCarthy)

18. Prior to October 12, 2013, Equinox opened a Club in Summit New Jersey. .

19. On or after October 12, 2013, McCarthy, went to the Club located in Summit, New Jersey to enroll as a member.

20. The Membership Agreement, which is annexed hereto as Exhibit A, was used by Equinox to enroll McCarthy in a membership.

21. The Membership Agreement authorized McCarthy to use Equinox's facilities in Summit, New Jersey.

22. The Membership Agreement provides services offered by a health club for the preservation, maintenance, encouragement or development of physical fitness or physical wellbeing.

23. Equinox drafted the Membership Agreement.

24. McCarthy signed the Membership Agreement.

25. The Membership Agreement requires McCarthy to make certain payments over a time period greater than two months.

26. Page 1 of the Membership Agreement, in a section titled "Payment Option: Bill Monthly Continuous" states:

> <u>Member Payment Details</u>
> Payment Type:  Credit Card
> Amount Due:
> 1.        Select Initiation Fee                    0.00
> 2.        Select-Monthly                          92.90
> 3.        Select-Monthly                         144.00
> 4.        Free Stuff 001                            0.00
>
> Subtotal:    236.90
> Tax:     16.58
> Total:    253.48

27. Page 1 of the Membership Agreement in a section titled "<u>ELECTRONIC FUNDS TRANSFER</u>" states:

I, Buyer, authorize my bank to make my Equinox monthly payment by the method indicated below, and post it to my account.

**Member Recurring Dues**

| # | Description | Amount | First Billing | Last Billing | Billing Months |
|---|---|---|---|---|---|
| 1. | Select-Monthly | 144.00 | November 2013 | | |

With respect to Electronic Funds Transfers for monthly payments, I understand that the monthly dues will be $144.00, plus $10.08 (7.00) sales tax, and will be transferred on the 23rd day each monthly beginning November 2013.

28. The last paragraph on page 1 of the Membership Agreement states:

> The monthly dues will continued [sic] to be deducted each month at the monthly rate then in effect.  Equinox will provide thirty days' [sic] notice to Member of any change in the monthly rate.  I understand this Agreement is for a minimum of twelve (12) months after which time I may terminate my membership at any time by providing 45 days' [sic]

written notice either in person at the club or by certified or registered mail to Equinox. The Additional Membership Agreement terms set forth below are part of this Agreement and by signing below, I acknowledged and agree to abide by all such Additional Membership terms.

29. The Membership Agreement does not set forth McCarthy's total payment obligation.

30. Paragraph 13 of the ADDITIONAL MEMBERSHIP AGREEMENT TERMS states in part: "If any check or credit card charge payable to Equinox is not honored, Management will asses a $25 charge for each check and credit card rejected and collect the current and past-due balance in any subsequent month".

### Membership Agreement
#### (As to Plaintiff Kennedy)

31. Prior to June 10, 2013, Equinox opened a Club in Summit New Jersey.

32. On or after June 10, 2013, Kennedy, went to the Club located in Summit, New Jersey to enroll as a member.

33. The Membership Agreement, which is annexed hereto as Exhibit B, was used by Equinox to enroll Kennedy in a membership.

34. The Membership Agreement authorized Kennedy to use Equinox's facilities in Summit, New Jersey.

35. The Membership Agreement provides services offered by a health club for the preservation, maintenance, encouragement or development of physical fitness or physical wellbeing.

36. Equinox drafted the Membership Agreement.

37. Kennedy signed the Membership Agreement.

38. The Membership Agreement requires Kennedy to make certain payments over a time period greater than two months..

39. Page 1 of the Membership Agreement  in a section titled "MONTHLY MEMBERSHIP" is states;

|  MONTHLY MEMBERSHIP | |
| --- | --- |
| Initiation Fee: | $175 (w/o $100 G.C.) |
| 1st Month's Partial Fee: | 100.80 |
| (1) Months Advance Payment | 144.00 |
| Subtotal: | |
| Sales Tax: | 29.39 |
| Total: | 449.19 |

40. On page 1 included in a provision titled "Electronic Funds Transfer Authorization" the Membership Agreement states:  "I understand that the monthly dues will be $144.00, plus _____ sales tax, and will be transferred on the 23rd day each monthly beginning _____ I understand this Agreement is for a minimum of twelve (12) months after which time I may terminate my membership at any time by providing 45 days' [sic] written notice either in person at the club or by certified or registered mail to Equinox.  The Additional Membership Agreement terms set forth below are part of this Agreement and by signing below, I acknowledged and agree to abide by all such Additional Membership terms.

41. The section further states: >> THIS NOTICE PROVIDES IMPORTANT INFORMATION ABOUT YOUR PAYMENTS OPTIONS<<

New York State law requires certain health clubs to have a bond or other form of financial security to protect members in the event the club closes.  The club has posted the financial security required by law.

YOU MAY ASK A REPRESENTATIVE OF THE CLUB FOR PROOF OF THE CLUB'S COMPLIANCE WITH THIS LAW.  YOU MAY ALSO OBTAIN THIS INFORMATION FROM THE NEW YORK STATE DEPARTMENT OF STATE, DIVISION OF LICENSING SERVICES, 162 WASHINGTON AVENUE, ALBANY, NY 12231.

42. The Membership Agreement does not set forth or state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division

of Consumer Affairs for the State of New Jersey, to protect buyers of these contracts who are

damaged or suffer any loss by reason of breach of contract or bankruptcy by the seller.

43. The Membership Agreement does not set forth Kennedy's total payment obligation.

44. The last paragraph on page 1 of the Membership Agreements states:

> Buyer Right to Cancellation: You may cancel this contract without any penalty or further obligation by providing written notice by certified or registered mail provided to Equinox within (3) days from the agreement date only. BUYER AND MEMBER EACH HEREBY ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS AGREEMENT EXECUTED BY BOTH MEMBER/BUYER AND SELLER. MEMBER/BUYER AND SELLER EACH ACKNOWLEDGE THE ADDITIONAL MEMBERSHIP AGREEMENT TERMS SET FORTH ON THE FOLLOWING PAGES.
> I understand that this Agreement is for a minimum of twelve (12) months, after which time Member may terminate his or her membership at any time with 45 days'[sic] written notice by certified or registered mail to Equinox.

45. Paragraph 1 of the ADDITIONAL MEMBERSHIP AGREEMENT TERMS provides;

> CONSUMER RIGHT TO CANCELLATION. YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATION WITHIN THREE (3) DAYS FROM THE DATE OF THIS AGREEMENT. Notice of cancellation shall be provided in written by Buyer and mailed by registered or certified United States mail to the Seller at: Equinox - member Services, One Park Avenue, 2nd Floor, New York, NY 10016. Such notice shall be accompanied by the contract forms, membership cards and any other documents of evidence of membership previously delivered to the Buyer. All monies paid pursuant to such contract shall be refunded within fifteen (15) days of receipt of such notice of cancellation. If the Buyer has executed any credit or loan agreement to pay for all or part of health club services, any such negotiable instrument executed by the Member or Buyer shall also be returned within fifteen (15) days.

46. Paragraph 12 of the ADDITIONAL MEMBERSHIP AGREEMENT TERMS provides in

part:.

> If any check or credit card charge payable to Equinox is not honored, Management will assess a $25 charge for each check and credit card rejected and collect the current and past-due balance in any subsequent month.

## CLASS ACTION ALLEGATIONS

47. This action is brought and may properly proceed as a class action, pursuant to the provisions of Fed. R. Civ. P. 23. Plaintiffs bring this action on behalf of themselves and all others similarly situated..

48. Plaintiffs seek certification of a Class and a Sub-Class, initially defined as follows:

**CLASS:** All persons who, at any time on or after the day six (6) years prior to the day the original Complaint was filed, enrolled in a membership at and/or for use at any Equinox club located in New Jersey, where the Membership Agreement used to enroll that person was the same as and/or substantially similar to the Membership Agreement that the named Equinox used in its respective transactions with the named Plaintiffs insofar as it:

(1) obligates customers to automatically and perpetually renew their monthly memberships (and attendant automatic withdrawals from their customer's bank or credit card account), unless the customers provides written notice within forty-five (45) days, only after the customer has been a member for at least 12 months.

(2) does not specifically set forth in a conspicuous manner on its first page the Plaintiffs' total payment obligation for the health club services to be received pursuant to the contract;

(3) does not state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs for the State of New Jersey, to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy;

(4) contains a provision which assesses a $25 charge if any check or credit card payable to Equinox is not honored or rejected;

(5) fails to inform the customer of his/her right to cancel their membership within three days after the customer receives a copy of the contract, by providing written notice by personal delivery.

**SUB-CLASS #1:** All persons who, at any time on or after the day one (1) year prior to the day on the original Complaint was filed, enrolled in a gym membership at and/or for use at any Equinox club located in New Jersey, where the Membership Agreement used to enroll that person was the same as and/or substantially similar to the Membership Agreement that Equinox used in its respective transactions with the named Plaintiffs insofar as it fails to disclose, in a

clear and conspicuous tabular form, the annual percentage rate ("APR"); the fees for issuance or availability; the fixed finance charge; the minimum interest charge; the transactions charge; the grace period; the balance computation method; the cash advance fee; the late payment fee; the over-the-limit fee; the balance transfer fee; the returned payment fee; the required insurance, debt cancellation or debt suspension coverage fee; the available credit; and/or a reference to the consumer's right to dispute transactions.

49. The members of the Class and Sub-Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

50. There are questions of law and/or fact common to the members of the Class and Sub-Class that predominate over questions affecting only individuals.   These common questions include:

    a.   Whether Equinox operates health clubs under the HCFA.

    b.   Whether Equinox used Membership Agreements to enroll Plaintiffs and others similarly situated which:

        i.   obligate customers to automatically and perpetually renew their monthly memberships (and attendant automatic withdrawals from their customer's bank or credit card account), unless the customers provides written notice within forty-five (45) days, only after the customer has been a member for at least 12 months;

        ii.   do not specifically set forth in a conspicuous manner on its first page the Plaintiffs' total payment obligation for the health club services to be received pursuant to the contract;

        iii.   do not state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs for the State of New Jersey, to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy;

        iv.   contains a provision which assess a $25 charge if any check or credit card payable to Equinox is not honored or rejected;

        v.   fails to inform the customer of his/her right to cancel their membership within three days after the customer receives a copy of the contract, by providing written notice by personal delivery;

       vi.  fails to disclose, in a clear and conspicuous tabular form, the required disclosures for an open-end credit plan.

    c.  Whether the above-referenced conduct by Equinox violated the HCFA, the CFA, TILA, RISA and/or TCCWNA.

    d.  What is the proper measure and appropriate statutory formula to be applied in determining the damages owed by Equinox to Plaintiffs and the Class and Sub-Class.

    e.  Whether Plaintiffs and the Class and Sub-Class are entitled to rescind their health club service contracts.

    f.  Whether Plaintiffs and the Class are entitled to declaratory, injunctive and/or other relief.

51. Plaintiffs' claims are typical of the claims of the members of the Class and Sub-Class which they represent because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by Equinox in their dealings with Plaintiffs.

52. Plaintiffs have no interests antagonistic to those of the Class and Sub-Class.

53. The Class and Sub-Class, of which Plaintiffs are members, are readily identifiable.

54. Plaintiffs will fairly and adequately protect the interests of the Class and Sub-Class, and has retained competent counsel experienced in the prosecution of consumer litigation.  Proposed Class Counsel has investigated and identified potential claims in the action.  Proposed Class Counsel has extensive experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  While the economic damages suffered by the individual members of the Class and Sub-Class are significant, the amount is modest compared to the expense and burden of individual litigation.

56. The questions of law or fact common to the members of the Class and Sub-Class

predominate over any questions affecting only individual members.

57. The prosecution of separate actions by individual members of the Class and Sub-Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Equinox in this action, or the prosecution of separate actions by individual members of the Class and Sub-Class would create the risk that adjudications with respect to individual members of the Class and Sub-Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

58. Equinox has acted, or refused to act, on grounds generally applicable to Plaintiffs and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and Sub-Class as a whole.

59. A class action will cause an orderly and expeditious administration of the claims of the Class and Sub-Class, and will foster economies of time, effort and expense.

60. Plaintiffs do not anticipate any difficulty in the management of this litigation.

**<u>FIRST COUNT</u>**
**(Violations of the HCSA and the CFA)**

61. Plaintiffs, on behalf of themselves and all others similarly situated, re-assert and incorporate by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

62. Plaintiffs and all others similarly situated are buyers of health club services, as defined by the HCSA at <u>N.J.S.A.</u> 56:8-39(c) and are "persons" as defined by the CFA at N.J.S.A. 56:8-1.

63. Equinox clubs are "health clubs" as defined by the HCSA at <u>N.J.S.A.</u> 56:8-39(b) and are sellers of "merchandise" as defined by the CFA at N.J.S.A. 56:8-1.

64. The Membership Agreements, which Equinox used to enroll Plaintiffs and all others similarly situated are "health club contracts" as defined by the HCSA at N.J.S.A. 56:8-39(d) and the services provided thereunder are "merchandise" as defined by the CFA at N.J.S.A. 56:8-1.

65. The HCSA at N.J.S.A. 56:8-42(b) provides:

   A health club services contract shall specifically set forth in a conspicuous manner on the first page of the contract the buyer's total payment obligation for health club services to be received pursuant to the contract.

66. The Membership Agreements used by Equinox do not specifically set forth in a conspicuous manner on their first pages the Plaintiffs' total payment obligation for the health club services to be received pursuant to the contract.

67. The HCSA at N.J.S.A. 56:8-41(a) provides, in its relevant part:

   A person who sells or offers for sale health club services shall, for each health club facility operated in the State, maintain a bond issued by a surety authorized to transact business in this State or maintain an irrevocable letter of credit by a bank or maintain with the director securities, moneys or other security acceptable to the director to fulfill the requirements of this subsection. … The bond, letter of credit, or securities, moneys or other security shall be filed or deposited with the director and shall be executed to the State of New Jersey for the use of any person who, after entering into a health club services contract, is damaged or suffers any loss by reason of breach of contract or bankruptcy by the seller.

68. The HCSA at N.J.S.A. 56:8-42(c) further provides:

   A health club services contract of a health club facility which maintains a bond, irrevocable letter of credit or securities, moneys or other security pursuant to subsection a. of section 3 of this act shall set forth that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect buyers of these contracts who are damaged or suffer any loss by reason of breach of contract or bankruptcy by the seller.

69. Equinox failed to maintain a bond, irrevocable letter of credit or securities, moneys or other security with the Director of the Division of Consumer Affairs to protect their customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

70. In the alternative, Equinox failed to maintain a bond, irrevocable letter of credit or securities, moneys or other security with the Director of the Division of Consumer Affairs to protect their customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

71. In either event, hundred if not thousands of Membership Agreements used by Equinox do not state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

72. The HCSA at N.J.S.A. 56:8-42(d) provides:

Services to be rendered to the buyer under the contract shall not obligate the buyer for more than three years from the date the contract is signed by the buyer.

73. The HCSA at N.J.S.A. 56:8-42(3) further provides:

A contract for new... health club services may be cancelled by the buyer for any reason at any time before midnight of the third operating day after the buyer receives a copy of the contract.  In order to cancel a contract the buyer shall notify the health club of cancellation in writing, by registered or certified mail, return receipt requested, or personal delivery, to the address specified in the contract...".

74. The Membership Agreements used by Equinox, similar to the  one annexed hereto as Exhibit A, fail to inform the buyer of his/her right to notify Equinox of a cancellation in writing via personal delivery to the address specified in the Membership Agreement.

75. The Membership Agreements used by Equinox to enroll Plaintiffs and all others similarly situated (1) fail to inform the buyer of his/her right to notify Equinox of a cancellation in writing via personal delivery to the address specified in the Membership Agreement; (2) fail to conspicuously state their customers' total payment obligations for the health club services

to be received; and (3) fail to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy.

76. The HCSA at N.J.S.A. 56:8-46 provides:

It is an unlawful practice and a violation of P.L. 1960, c. 39 (C. 56:8-1 et seq.) to violate the provisions of this act.

77. The CFA at N.J.S.A. 5:8-2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

78. Equinox has therefore violated the HCSA and/or the CFA.

79. Equinox violated:

a. the HCSA at N.J.S.A. 56:8-42(e) by using Membership Agreements which fail to inform the buyer of his/her right to notify Equinox of a cancellation in writing via personal delivery to the address specified in the Membership Agreement;

b. the HCSA at N.J.S.A. 56:8-42(b) by using Membership Agreements which fail to specifically set forth in a conspicuous manner on the first page of the Membership Agreements the buyer's total payment obligation for health club services to be received pursuant to the health service contracts;

c. the HCSA at N.J.S.A. 56:8-41 and/or N.J.S.A. 56:8-42(b) by using Membership Agreements which fail to state that a bond, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy or – alternatively – failing to file or deposit with the Director of the Division of Consumer Affairs a bond, irrevocable letter of credit or securities, moneys or other security

to protect customers who are damaged or suffer any loss by reason of breach of contract or bankruptcy;

d. the CFA, by using Membership Agreements which violate the HCSA, which is an unlawful practice and a violation of the CFA pursuant to N.J.S.A. 56:8-46;

e. the CFA at N.J.S.A. 56:8-2 in using an unconscionable commercial practice in Defendants' cancellation policies and/or billing practices because they impose unreasonable conditions for the sole purpose of discouraging and impeding "cancellations" of the perpetual, automatically renewing monthly memberships, and thereby cause buyers to pay for unwanted services;

f. the CFA at N.J.S.A. 56:8-2 in using an unconscionable commercial practice, deception, fraud and/or misrepresentation by failing to set forth the total payment obligation on first page of the Membership Agreements;

g. Plaintiffs and all others similarly situated have suffered an ascertainable loss from the Defendants' violations of the CFA in the amount of all monthly dues collected by Defendants subsequent to Defendants receiving a cancellation notice.

h. Plaintiffs and all others similarly situated have suffered an ascertainable loss from the Defendants' violations of the CFA in the amount of the postage that the Membership Agreement required them to pay in order to "cancel" the unlawful renewal obligation.

## SECOND COUNT
### (Violations of RISA)

80. Plaintiffs, on behalf of themselves and all others similarly situated, re-assert and incorporate by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

81. Plaintiffs and all others similarly situated are "retail buyers" as defined by RISA at N.J.S.A. 17:16C-1(d).

82. Equinox  is a  "retail sellers" as defined by RISA at N.J.SA. 17:16C-1(c).

83. Equinox is a "sales finance companies" as defined by RISA at N.J.SA. 17:16C-1(c).

84. Equinox is a  "holders" as defined by RISA at N.J.SA. 17:16C-1(c).

85. The Membership Agreements, which Equinox used to enroll Plaintiffs and all others similarly situated, are "retail installment contracts" as defined by RISA at N.J.SA. 17:16C-1(b).

86. RISA, at N.J.S.A. 17:16C-42, provides:

> The retail installment contract or retail charge account may provide for a return check fee not to exceed $20.00, which the holder of the contract may charge the buyer if a check of the buyer is returned to the holder uncollected due to insufficient funds in the buyer's account..

87. The Membership Agreements used by Equinox to enroll Plaintiffs and all others similarly situated contain a provision which assess a $25 charge for each check are credit card charge payable to Equinox, which is not honored or rejected.

88. Defendants have therefore violated RISA at N.J.S.A. 17:16C-42 by using Membership Agreements which contain a provision charging a $25 fee if any check or credit card charge payable to Equinox is not honored or rejected.

### THIRD COUNT
### (Violations of TILA)

89. Plaintiffs, on behalf of themselves and all others similarly situated, re-assert and incorporate by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

90. The enrollment of Plaintiffs in gym memberships was a consumer credit transaction within the meaning of TILA, 15 U.S.C. 1602 and Regulation Z §1026.2.

91. The gym memberships in which Plaintiffs were enrolled were open end credit plans within the meaning of TILA, 15 U.S.C. 1602 and Regulation Z §1026.2.

92. Regulation Z, at 12 C.F.R. 1026.5(a)(3), mandates certain account-opening disclosures in a tabular format.

93. Regulation Z, at 12 C.F.R. 1026.6(b)(2), mandates disclosure of the annual percentage rate ("APR"); the fees for issuance or availability; the fixed finance charge; the minimum interest charge; the transactions charge; the grace period; the balance computation method; the cash advance fee; the pate payment fee; the over-the-limit fee; the balance transfer fee; the returned payment fee; the required insurance, debt cancellation or debt suspension coverage fee; the available credit; and a reference to the consumer's right to dispute transactions.

94. The Membership Agreements used by Equinox failed to disclose, in a tabular form, the annual percentage rate ("APR"); the fees for issuance or availability; the fixed finance charge; the minimum interest charge; the transactions charge; the grace period; the balance computation method; the cash advance fee; the pate payment fee; the over-the-limit fee; the balance transfer fee; the returned payment fee; the required insurance, debt cancellation or debt suspension coverage fee; the available credit; and/or a reference to the consumer's right to dispute transactions.

95. Equinox has therefore violated TILA:

a. at 12 C.F.R. 1026.5(a)(3) by using Membership Agreements which fail to contain the required account-opening disclosures in tabular form; and/or

b. at 12 C.F.R. 1026.6(b)(2) by using Membership Agreements which fail to disclose, in a tabular form, the annual percentage rate ("APR"); the fees for issuance or availability; the fixed finance charge; the minimum interest charge; the transactions charge; the grace period; the balance computation method; the cash advance fee; the pate payment fee; the over-the-limit fee; the balance transfer fee; the returned payment fee; the required insurance, debt cancellation or debt suspension coverage fee; the available credit; and/or a reference to the consumer's right to dispute transactions.

## FOURTH COUNT
### (Violations of TCCWNA)

96. Plaintiffs, on behalf of themselves and all others similarly situated, re-assert and incorporate by reference each and every allegation set forth in the preceding paragraphs as though set forth at length herein.

97. Plaintiffs and all others similarly situated are "consumers" as defined by TCCWNA as set forth at N.J.S.A. 56:12-15.

98. Defendants are "sellers" governed by TCCWNA as set forth at N.J.S.A. 56:12-15.

99. The Membership Agreements, which Equinox used to enroll Plaintiffs and all others similarly situated, are "written consumer contracts" governed by TCCWNA as set forth at N.J.S.A. 56:12-15.

100.    TCCWNA, at <u>N.J.S.A.</u>56:12-15, provides:

. No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.  Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of  real estate, whether improved or not, or to the construction of new homes  subject to  "The New Home Warranty and Builders' Registration Act," P.L.1977,  c. 467 (C. 46:3B-1 et seq.).

101.    TCCWNA, at N.J.S.A. 56:12-16, provides in its relevant part:

No consumer contract, notice  or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.

102.    The Membership Agreements used by Defendants to enroll Plaintiffs and all others similarly situated (1) state that their provisions are and/or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; and (2) violate the HCSA, the CFA ,RISA or TILA and Regulation Z in the manner set forth in greater detail above.

103.   Equinox has therefore violated TCCWNA:

at N.J.S.A. 56:12-15 by using Membership Agreements which including language that violates the HCSA, the CFA, TILA and/or RISA.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, demands judgment against Equinox as follows:

a.   An order certifying this matter as a class action under Fed. R. Civ. P. 23;

b.   A declaratory judgment that Equinox violated the Health Club Services Act, N.J.S.A. 56:8-39 *et seq.*; the Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.;* the New Jersey Retail Installment Sales Act, N.J.S.A. 17:16C-1, *et seq.;* the Truth in Lending Act and Regulation Z, and/or the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 *et seq*;

c.   A judgment for injunctive relief enjoining Equinox from engaging in future violations of the HCSA, the CFA, TILA, RISA and/or TCCWNA;

d.   A judgment for actual damages, compensatory damages and/or treble damages under the HCSA, the CFA, TILA, RISA and/or TCCWNA and all other applicable statutes;

e.   A judgment for maximum statutory damages under the HCSA, the CFA, TILA, RISA and/or TCCWNA and all other applicable statutes;

f.   A judgment for reasonable attorneys' fees and costs of suit in connection with this action, pursuant to the HCSA, the CFA, TILA, RISA and/or TCCWNA and all other applicable statutes;

g.   A judgment for pre-judgment and/or post-judgment interest; and

h.   A judgment for such other and further relief as Plaintiffs and others similarly situated may be entitled or as the Court deems equitable and just.

Dated: Fairfield, New Jersey
      January 2, 2014

*s/ Joseph K. Jones*             
Joseph K. Jones, Esq. (JJ5509)
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile
jkj@legaljones.com

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

*s/ Joseph K. Jones*             
Joseph K. Jones, Esq.

## **CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I, Joseph K. Jones, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: January 2, 2014

*s/ Joseph K. Jones*             
Joseph K. Jones, Esq.

# Exhibit

# A

McCarthy and Kennedy
v.
Equinox Holdings Inc.



# MEMBERSHIP AGREEMENT

68 River Rd  Summit, NJ 07901

| | | |
|---|---|---|
| **Member #:** | **1002126262** | **Agreement #:1320-1001092352** |
| **Membership:** | **Select** | **HC#: 01742 HC#: 01742** |
| **Start Date:** | **10/12/2013** | |
| **Obligation Date:** | **10/11/2014** | |

This AGREEMENT ("Agreement"), made this date,10/12/2013, by and between Equinox Summit Inc d/b/a located at 68 River Road Summit, NJ 07901 and Equinox Fitness Club (referred to in this Agreement as "Seller", "Equinox" or the "Club") and Lesley Mccarthy, the undersigned Buyer (referred to in this Agreement as "you" or "Buyer" or "Member" if applicable).

| | | | |
|---|---|---|---|
| Member Name: | Lesley Mccarthy | Business Phone: | |
| Address: | | Home Phone: | |
| City, State, ZIP: | | Referred By: | |

**Payment Option: Bill Monthly Continuous**

**Member Payment Details**

Payment Type: Credit Card

Amount Due:

Promotion: 2013 - Summit Select. 100% discount on Initiation Fee; Add Item# FREESTUFF001 - 0

| # | Description | Amount |
|---|---|---|
| 1 | Select Initiation Fee | 0.00 |
| 2 | Select-Monthly | 92.90 |
| 3 | Select-Monthly | 144.00 |
| 4 | Free Stuff 001 | 0.00 |

| | |
|---|---|
| Subtotal: | 236.90 |
| Tax: | 16.58 |
| **Total:** | **253.48** |

### ELECTRONIC FUNDS TRANSFER

I, Buyer, authorize my bank to make my Equinox monthly payment by the method indicated below, and post it to my account.

**Credit Card**

| | | |
|---|---|---|
| Card Type: | Card #: last 4 digits - | Valid Thru: |

**Member Recurring Dues**

| # | Description | Amount | First Billing | Last Billing | Billing Months |
|---|---|---|---|---|---|
| 1 | Select-Monthly | 144.00 | November 2013 | | |

With respect to Electronic Funds Transfers for monthly payments, I understand that the monthly dues will be $144.00, plus $10.08 (7.00) sales tax, and will be transferred on the 23rd day of each month beginning November 2013.

**Authorization for Equinox to Maintain My Credit Card or Bank Account Info on File and to Charge My Credit Card or Bank Account for Additional Goods and Services** – In addition to monthly payments for membership fees and dues, I, Buyer, authorize Equinox to keep my credit card or other financial institution information identified below on file and to post charges to such account for the cost of additional goods and services which I, Buyer (or the Member if different), purchase at any Equinox Club.

The monthly dues will continued to be deducted each month at the monthly rate then in effect. Equinox will provide thirty days' notice to Member of any change in the monthly rate. I understand this Agreement is for a minimum of twelve (12) months after which time I may terminate my membership at any time by providing 45 days' written notice either in person at the club or by certified or registered mail to Equinox. The Additional Membership Agreement Terms set forth below are part of this Agreement and by signing below I acknowledge and agree to abide by all such Additional Membership Agreement Terms.

_____      _____
(Member / Buyer Signature)                          Date

10/12/2013

NOTICE TO CUSTOMER

You are entitled to a copy of this Agreement at the time you sign it.

You may cancel this Agreement at any time before midnight of the third operating day after receiving a copy of this Agreement. If you choose to cancel this Agreement, you must either:

1. Send a signed and dated written notice of cancellation by registered or certified mail or personally delivered return receipt requested;

or

2. Personally deliver a signed and dated written notice of cancellation to Equinox Summit 68 River Road Summit, NJ 07901. If you cancel this Agreement within the three-day period, you are entitled to a full refund of your money. If the third operating day falls on a Sunday or holiday, notice is timely given if it is mailed or delivered as specified in this notice on the next operating day. Refunds must be made within 30 days of receipt of the cancellation notice to Equinox. For purposes of this Agreement, 'operating day' means any calendar day on which patrons may inspect and use the Equinox's facilities and services during a period of at least eight hours, except holidays and Sundays.

10/12/2013

Buyer Right to Cancellation: You may cancel this contract without any penalty or further obligation by providing written notice by certified mail or registered mail or personally delivered mail to Equinox within (3) days from the club open date only.   BUYER AND MEMBER EACH HEREBY ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS AGREEMENT EXECUTED BY BOTH MEMBER/BUYER AND SELLER. MEMBER/BUYER AND SELLER EACH ACKNOWLEDGE THE ADDITIONAL MEMBERSHIP AGREEMENT TERMS SET FORTH ON THE FOLLOWING PAGES.

I understand that this Agreement is for a minimum of twelve (12) months, after which time Member may terminate his or her membership at any time with 45 days' written notice by certified or registered mail to Equinox.

_____          _____
(Member / Buyer Signature)                                    Date

10/12/2013

## ADDITIONAL MEMBERSHIP AGREEMENT TERMS

1. CONSUMER'S RIGHT TO CANCELLATION. YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATION WITHIN THREE (3) DAYS FROM THE DATE OF THIS AGREEMENT. Notice of cancellation shall be personally delivered by Buyer or mailed by registered or certified United States mail to Equinox Summit 68 River Road Summit, NJ 07901. Such notice shall be accompanied by the contract forms, membership cards and any other documents of evidence of membership previously delivered to the Buyer. All monies paid pursuant to such contract shall be refunded within fifteen (15) business days of receipt of such notice of cancellation. If the Buyer has executed any credit or loan agreement to pay for all or part of such club services, any such negotiable instrument executed by the Member or Buyer shall also be returned within fifteen (15) business days.

2. ADDITIONAL RIGHTS TO CANCELLATION. If the services of the Club cease to be offered as stated in the contract, If the Buyer has executed any credit or loan agreement to pay for all or part of the health club services, such negotiable instrument executed by the Buyer shall also be returned within fifteen (15) days. Promotional Months: Member agrees that if Member received any free months as an inducement to enter into this Agreement or as a result of referring new members, such free months shall not be considered in computing the amount of any refund to which Member shall be entitled. Member/Buyer shall be responsible for retaining (and presenting, if necessary) all records relating to any cancellation of this Agreement. This contract is also subject to cancellation by notice sent by registered or certified mail, return receipt requested, or personally delivered, to: Equinox Summit 68 River Road Summit, NJ 07901 in the following instances:
a) Upon the buyer's death or permanent disability, if the permanent disability is fully described and confirmed to the health club by a physician. In a cancellation under this subsection, the health club may retain the portion of the total contract price representing the services used plus reimbursement for expenses incurred in an amount not to exceed 10% of the total contract price."
b) Upon the buyer's change of permanent residence to a location more than 25 miles from the health club or an affiliated health club offering the same or similar services and facilities at no additional expense to the buyer. In a cancellation under this subsection, the health club may require proof of the new permanent residence and may retain a prorated share of the total contract price based upon the date the notice was received plus reimbursement for expenses incurred in an amount not to exceed 10% of the total contract price.

3. MEMBER'S HEALTH WARRANTY; Member and/or Buyer represent that Member is in good health and has no disability, impairment, injury, disease or ailment preventing him/her from engaging in active or passive exercise or which would cause increased risk or injury or adverse health consequences as a result of use of the Club or its facilities in any manner.

4. RULES, REGULATIONS, AND SCHEDULES; Member agrees to abide by all membership rules, regulations and schedules of Equinox, which may be posted at the club or issued orally, and which may be amended from time to time, at Equinox's sole discretion.

5. PRESENTATION OF MEMBERSHIP CARD; No one will be admitted to Equinox Fitness Clubs without displaying a valid membership card or registering as a guest and providing identification.

6. INDEPENDENT CONTRACTORS; From time to time we may make available to Members and their guests the services of independent contractors. We do not warrant or guarantee the quality of these services and do not guarantee that these services will remain available to Members or their guests for any period of time, and hereby disclaim all liability arising out of such services.

7. GUESTS; Member's guests are permitted in the club, but only pursuant to such rules, regulations, fees, and schedules for such guest as may then be in effect. The Club reserves the right to limit the number of times any one guest can use the Club and reserves the right, in its discretion, to prevent any guest from using a Club. All guests must sign in at the front desk and present photo identification prior to using any Club.

8. TRANSFERS OF MEMBERSHIP; Memberships may not be transferred.

9. UPGRADING MEMBERSHIPS: A Member may upgrade his or her membership (e.g., Select to All Access) with the prior consent of management; provided Member/Buyer will be responsible for paying an upgrade fee and for the ongoing payment of any additional monthly fees associated with such upgrade. In addition, transfer to a Club offering only upgraded memberships will result in an upgrade fee and additional monthly fees.

10. BUYER'S OBLIGATIONS; Buyer shall not be relieved of Buyer's obligations to make payments agreed to, and no deduction from any payments shall be made because of Member's failure to use the Club's facilities. (Member dues are for the period of time and are no way related to actual usage of the Club.)

11. PAYMENT FOR CHARGES FOR OTHER GOODS AND SERVICES; Buyer has provided Equinox with its credit card or other financial institution information for the purpose of paying for goods and services which Buyer (or Member, if different) may purchase at any Equinox Fitness Club. These other charges may include fees for personal training, spa and/or fitness training sessions, retail apparel and other similar items, and food and beverage items. Buyer recognizes and agrees that Equinox will maintain this information in its files and acknowledges Equinox's right to charge the credit card or other account identified under the Authorizations Section on page 1 of this Agreement at any time and from time to time during the term of the membership.

12. ENTIRE AGREEMENT; Except for the rules, regulations and schedules posted at the Club or issued orally by Equinox from time to time at its discretion, all of which are incorporated into this agreement, this contract constitutes the entire and exclusive agreement between the parties relating to the subject matter hereto and supersedes any oral or other written understanding. This contract only may be modified in writing executed by a duly authorized representative of Equinox. Employees are not authorized to make any independent agreements with any Member/Buyer.

13. UNPAID BALANCES; Members will not be permitted to use any Club until all fees are current. Buyer and/or Member is obligated to pay any collection and/or legal costs incurred by Equinox for collection of any fees. Annual dues must be paid by 12:00 midnight on the anniversary date or Club privileges will be suspended and a new Initiation Fee will be required. Equinox reserves the right to charge balances and overdue balances to their current account under the Electronic Funds Transfer Authorization. If any check or credit card charge payable to Equinox is not honored, Management will assess a $25 charge for each check and credit card rejected and collect the full amount of any past-due balance in any subsequent month. To the extent that Buyer and Member are not the same person, Member shall be obligated to make all payments that Buyer fails or has failed to make (including past and future payments for use of the Club).

14. LOCKERS; Lockers are provided solely for the benefit and convenience of members. Management will remove any articles left in a locker overnight. Members must provide their own lock. Rental lockers cannot be placed on freeze. Locker rental fees are non-refundable.

15. VALUABLES AND PERSONAL PROPERTY; Members are urged to avoid bringing valuables onto Club premises. Equinox shall not be liable for the loss of, or theft of, or damage to, the personal property of Member or guests, including items left in lockers, with the coat check or elsewhere in the Club.

16. CHILDREN'S USE: Children under 15 years of age may use the Club only during a previously announced Club-sponsored activity and must be accompanied by a parent AT ALL TIMES.   Some children's programs require fees to be paid in advance. Equinox has the right to discontinue usage by any child whose behavior is offensive to any other member or who is unsupervised.

17. MEMBERSHIP FREEZE POLICY; Members may temporarily suspend their membership in accordance with the following terms:
A) You may freeze your membership once per contractual year for a minimum of one (1) month and a maximum of three (3) consecutive months in one-month increments. You will be charged Equinox's then current freeze fee. If you freeze your membership during the first 12 months of your membership, you will be charged regular monthly dues until you meet the one year obligation, after which you will be charged Equinox's then current monthly freeze fee for the period of the freeze. If you have been a member for 12 months or longer on the day the freeze is effective, you will be charged the then current freeze fee up front and billing will be held for the approved duration of your freeze. Freeze fees for the period of the freeze you elect are non-refundable, even if you later reduce the number of months of suspension of your membership.
B) Your freeze request must be done in person at the Club, online at http://www.equinox.com or by certified mail to Equinox - Member Services, One Park Avenue, 2nd Floor, New York, NY 10016at least five (5) days before the intended freeze start date.
C) If you are medically unable to use the Club, you can request a medical freeze for up to six (6) months (nine (9) months for pregnancy freeze). You must provide a doctor's letter at the time you request a medical freeze.
D) You may not freeze your membership for any reason unless your account is in good standing. Members joining as part of a corporate program shall not be permitted to freeze their memberships
E) All freeze requests must be made in advance. No retroactive freezes are permitted.

18. GROUP FITNESS RULES; Allow enough time to sign in before each class.  Do not enter a class late or leave early unless you give the instructor prior notice. If you are just starting Group Fitness or have a pre-existing injury or problems that prevent full participation, please discuss the situation with the Group Fitness instructor before class. Athletic shoes must be worn in all Group Fitness classes.

19 DRESS CODE; Proper athletic attire and footwear are required. No street clothes or dress shoes permitted in fitness area. Management has the right to prevent the use of any equipment if the proper attire is not worn.

20. PERSONAL TRAINING AND SPA SESSIONS; All sales of personal training and spa sessions are final and non-refundable.  Personal training and spa sessions expire 160 days from the date of purchase, unless indicated otherwise.

A) 24 HOUR CANCELLATION POLICY. Members may cancel or change the time of the session with a minimum of 24-hours notice.  Member will be charged for the full cost of the Session on any late cancellations or no-show appointments.
B) PAYMENTS. Payment for Sessions is required to be made by the Member on or before the date of the Session. If payment is not otherwise made by the Member, charges for late cancellations or no show appointments for Sessions will be charged to the Member's credit card which is on file with Equinox under the Member's membership agreement. In addition, charges for Sessions which are used by a Member but not otherwise paid for will be charged to the Member's bank account or credit card which is on file with Equinox on the day on which the Session is used.
C) DISCOUNTS.  Equinox may offer discounts on Sessions to Members who purchase a group of Sessions. These discounts only apply to the number of Sessions purchased as a group.  Any further or additional Sessions will be charged at the regular rate then in effect for individual Sessions.
D) AUTOMATIC APPLICATION.  No action is required to be taken by a Member in connection with these regulations.

21. NON-EQUINOX PERSONAL TRAINERS; Use of non-Equinox Personal Trainers in the Club is prohibited. Members may not personal train other members.

22. PRICING: After the first 12 months of membership, Equinox reserves the right to increase the monthly or annual fee and will provide 30 days' notice to all Members regarding any such change in pricing; provided that pricing for Members who joined as part of a corporate program are subject to the pricing agreement between Seller and Member's employer or corporate sponsor.

23. CORPORATE MEMBERS: If Member is part of a corporate program between Equinox and a third party, then if there is a conflict or inconsistency between this Agreement and the terms and conditions of the letter of agreement between Equinox and such third party, the terms and conditions of the corporate program will govern and control.

24. REVOCATION OF MEMBERSHIP; Equinox reserves the right to revoke and cancel this membership at any time for any reason, in which case Buyer/Member will, no later than fifteen (15) days after such cancellation, receive a refund of all monies paid pursuant to this Agreement (except initiation fee), provided that Seller may retain expenses incurred or the portion of the total price of this Agreement representing the services used or completed, and provided further, that Seller may demand the reasonable cost of goods and services which the Buyer/Member has consumed or wishes to retain after cancellation.

25. WAIVER OF LIABILITY;  Member assumes full responsibility for his or her use of the facility and releases Equinox from any and all claims, including those caused in whole or in part, by the negligence of Equinox and shall indemnify Equinox, the owner of the club location the Member is utilizing, its affiliates, agents and employees against any and all liability arising out of use of the facilities.

26. COMPLIMENTARY ITEMS: Complimentary items (including, but not limited to Spa sessions, personal training sessions, Pilates sessions, complimentary gift cards or other promotional items) may be distributed at the discretion of Equinox and have no cash value.  Only members with an active account in good standing may redeem complimentary items in accordance with these terms and complimentary items become null and void upon termination or expiration of membership for any reason.

27. EXCLUSIONS FROM ALL ACCESS MEMBERSHIPS; All Access memberships do not include "E", Printing House, Century City, West LA, and Irvine. In addition to the health clubs identified in the previous sentence, Equinox may from time to time (in its sole discretion) exclude other Equinox Fitness Club locations (whether existing today or opened in the future) from the All Access Membership class. Member acknowledges and agrees that, once such exclusion is implemented, Member shall not thereafter have the right to use the excluded Equinox Fitness Club location(s), notwithstanding that the "all access" designation of her/his membership class.

28. EXCLUSIONS FROM REGIONAL MEMBERSHIPS; Equinox may from time to time (in its sole discretion) exclude Equinox Fitness Club locations (whether existing today or opened in the future) from the Regional Membership class. Member acknowledges and agrees that, once such exclusion is implemented, Member shall not thereafter have the right to use the excluded Equinox Fitness Club location(s), notwithstanding that the excluded health club(s) may be located within Member's geographic region.

29. BOND ON FILE: Equinox has filed a bond, letter of credit or other security with the Director of the Division of Consumer Affairs of the State of New Jersey. This has been filed to protect buyers who are damaged or suffer any loss by reason of breach of this contract by Equinox or bankruptcy of Equinox.

30. TEMPORARY CLOSURE. If this Club is closed for a period longer than 30 days through no fault of Buyer or Member, Buyer is entitled to either extend the contract for a period equal to that during which the Club is closed or to receive a prorated refund of the amount paid by Buyer under this Agreement.

_____                          _____
(Member / Buyer Signature)                                                   Date

10/12/2013

# Exhibit

# B

McCarthy and Kennedy
v.
Equinox Holdings Inc.

 EQUINOX

# MEMBERSHIP AGREEMENT

CLUB LOCATION: _____

AGREEMENT, made this date: _____ by and between Equinox Fitness Club located at _____ (referred to in this Agreement as "Seller", "Equinox" or the "Club") and _____, the undersigned Buyer (referred to in this Agreement as "you" or "Buyer" or "Member" if applicable).

MEMBER NAME: **Kim** _____ _____ **Kennedy** _____
                        ste Initial                              Last

Address: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Apt #: ▆▆▆

City: ▆▆▆▆▆▆▆▆▆ State: _____ Zip: ▆▆▆▆

Buyer's Name (if different): _____ E-mail Address: _____

Employer: _____ Phone: _____  ☐ Male  ☑ Female
                      Birthdate: _____

MEMBERSHIP CLASS: ☑ Select  ☐ AA Fitness  ☐ Regional Access  ☐ Junior  ☐ Corporate Access  ☐ Destination  ☐ Executive  ☐ D Executive

| ANNUAL MEMBERSHIP | MONTHLY MEMBERSHIP w/o $100 | OTHER |
|---|---|---|
| Initiation Fee: _____ | Initiation Fee: **$175 (G.C** | ☐ Upgrade Fee |
| Annual Dues: _____ | 1st Month's Partial Fee: **100.80** | ☐ Membership Transfer Fee |
| Subtotal: _____ | (1) Months Advance Payment: **144.00** | Full fee: _____ |
| Sales tax: _____ | Subtotal: _____ | Sales tax: _____ |
|  | Sales Tax: **29.39** |  |
| Total: _____ | Total: **449.19** | Total: _____ |

Amount Paid Today: $ _____   Balance Due: $ _____   Date Due: _____
☐ Cash ☐ Check # _____  ☐ Credit Card Type: _____  CC Expiration Date: _____
Credit Card#: ▆ _____

Electronic Funds Transfer Authorization – I, Buyer, authorize my bank to make my Equinox monthly payment by the method indicated below, and post it to my account. (Please check one box.)

☐ Checking Account (must attach voided check)                ☐ Credit Card (must attach voided credit card slip)

Bank name: _____                                        Card Type: _____

Bank address: _____                                     Card#: _____

Bank Routing Number: _____                              Exp. Date: _____

Account Number: _____

I understand that the monthly dues will be $ **144** plus $ _____ sales tax and will be transferred on the 23rd of each month beginning _____, 23rd 201___. The monthly dues will continued to be deducted each month at the monthly rate then in effect. Equinox will provide thirty days' notice to Member of any change in the monthly rate. I understand this Agreement is for a minimum of twelve (12) months after which time I may terminate my membership at any time by providing 45 days' written notice either in person at the club or by certified or registered mail to Equinox. The Additional Membership Agreement Terms set forth below are part of this Agreement and by signing below I acknowledge and agree to abide by all such Additional Membership Agreement Terms.

>>THIS NOTICE PROVIDES IMPORTANT INFORMATION ABOUT YOUR PAYMENT OPTIONS<<
New York State law requires certain health clubs to have a bond or other form of financial security to protect members in the event the club closes. This club has posted the financial security required by law.

YOU MAY ASK A REPRESENTATIVE OF THE CLUB FOR PROOF OF THE CLUB'S COMPLIANCE WITH THIS LAW. YOU MAY ALSO OBTAIN THIS INFORMATION FROM THE NEW YORK STATE DEPARTMENT OF STATE, DIVISION OF LICENSING SERVICES, 162 WASHINGTON AVENUE, ALBANY, N.Y. 12231

Member/Buyer Signature: _~signature~_    Date: **6/10/13**

Buyer Right to Cancellation: You may cancel this contract without any penalty or further obligation by providing written notice by certified or registered mail provided to Equinox within (3) days from the agreement date only. BUYER AND MEMBER EACH HEREBY ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS AGREEMENT EXECUTED BY BOTH MEMBER/BUYER AND SELLER. MEMBER/BUYER AND SELLER EACH ACKNOWLEDGE THE ADDITIONAL MEMBERSHIP AGREEMENT TERMS SET FORTH ON THE FOLLOWING PAGES.
I understand that this Agreement is for a minimum of twelve (12) months, after which time Member may terminate his or her membership at any time with 45 days' written notice by certified or registered mail to Equinox.

_~signature~_    **6/10/13**
(Member/Buyer Signature)      Date

Page 1 of 3

## ADDITIONAL MEMBERSHIP AGREEMENT TERMS

1. **CONSUMER'S RIGHT TO CANCELLATION.** YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATION WITHIN THREE (3) DAYS FROM THE DATE OF THIS AGREEMENT. Notice of cancellation shall be provided in writing by Buyer and mailed by registered or certified United States mail to the Seller at: Equinox - Member Services, One Park Avenue, 2nd Floor, New York, NY 10016. Such notice shall be accompanied by the contract forms, membership cards and any other documents of evidence of membership previously delivered to the Buyer. All monies paid pursuant to such contract shall be refunded within fifteen (15) business days of receipt of such notice of cancellation. If the Buyer has executed any credit or loan agreement to pay for all or part of health club services, any such negotiable instrument executed by the Member or Buyer shall also be returned within fifteen (15) business days.

2. **ADDITIONAL RIGHTS TO CANCELLATION:** You may also cancel this Agreement by providing 45 days' written notice in person at the Club or by certified or registered mail for any of the following reasons:

   a) If upon a doctor's order, you cannot physically receive the services because of significant physical disability for a period in excess of six months;
   b) If you die, your estate shall be relieved of any further obligation for payment under the contract not then due and owing;
   c) If you move your residence more than twenty-five miles from any health club operated by Seller (must provide satisfactory proof of new residence);
   d) If, within the first twelve months of your membership, your employment is involuntarily terminated without cause (must provide a letter from former employer confirming termination of employment and reason for termination); provided that any Member cancelling under this sentence shall be required to pay an early termination fee of $100.
   e) If the services of the Club cease to be offered as stated in the contract.
   f) All monies, except initiation fee, paid pursuant to such contract cancelled for the reasons in this paragraph shall be refunded provided however, that the Seller may retain the expenses incurred and the portion of the total price representing the services used or completed, and further provided, that the Seller may demand the reasonable cost of goods and services which the Buyer consumed or wishes to retain after cancellation of the contract. In no instance shall Seller demand more than the full contract price from the Buyer. If the Buyer has executed any credit or loan agreement to pay for all or part of the health club services, such negotiable instrument executed by the Buyer shall also be returned within fifteen (15) days. Promotional Months: Member agrees that if Member received any free months as an inducement to enter into this Agreement or as a result of referring new members, such free months shall not be considered in computing the amount of any refund to which Member shall be entitled. Member/Buyer shall be responsible for retaining (and presenting, if necessary) all records relating to any cancellation of this Agreement.

3. **MEMBER'S HEALTH WARRANTY:** Member and/or Buyer represent that Member is in good health and has no disability, impairment, injury, disease or ailment preventing him/her from engaging in active or passive exercise or which would cause increased risk or injury or adverse health consequences as a result of use of the Club or its facilities in any manner.

4. **RULES, REGULATIONS, AND SCHEDULES:** Member agrees to abide by all the membership rules, regulations and schedules of Equinox, which may be posted at the club or issued orally, and which may be amended from time to time, at Equinox's sole discretion.

5. **PRESENTATION OF MEMBERSHIP CARD:** No one will be admitted to Equinox Fitness Clubs without displaying a valid membership card or registering as a guest and providing identification.

6. **INDEPENDENT CONTRACTORS:** From time to time we may make available to Members and their guests the services of independent contractors. We do not warrant or guarantee the quality of these services and do not guarantee that these services will remain available to Members or their guests for any period of time, and hereby disclaim all liability arising out of such services.

7. **GUESTS:** Member's guests are permitted in the club, but only pursuant to such rules, regulations, fees, and schedules for such guest as may then be in effect. The Club reserves the right to limit the number of times any one guest can use the Club and reserves the right, in its discretion, to prevent any guest from using a Club. All guests must sign in at the front desk and present photo identification prior to using any Club.

8. **TRANSFERS OF MEMBERSHIP:** Memberships may not be transferred.

9. **UPGRADING MEMBERSHIPS:** A Member may upgrade his or her membership (e.g., Select to All Access) with the prior consent of management; provided Member/Buyer will be responsible for paying an upgrade fee and for the ongoing payment of any additional monthly fees associated with such upgrade. In addition, transfer to a Club offering only upgraded memberships will result in an upgrade fee and additional monthly fees.

10. **BUYER'S OBLIGATIONS:** Buyer shall not be relieved of Buyer's obligations to make payments agreed to, and no deduction from any payments shall be made because of Member's failure to use the Club's facilities. (Member dues are for the period of time and are no way related to actual usage of the Club.)

11. **ENTIRE AGREEMENT:** Except for the rules, regulations and schedules posted at the Club or issued orally by Equinox from time to time at its discretion, all of which are incorporated into this agreement, this contract constitutes the entire and exclusive agreement between the parties relating to the subject matter hereto and supersedes any oral or other written understanding. This contract may only be modified in writing executed by a duly authorized representative of Equinox. Employees are not authorized to make any independent agreements with any Member/Buyer.

12. **UNPAID BALANCES:** Members will not be permitted to use any Club until all fees are current. Buyer and/or Member is obligated to pay any collection and/or legal costs incurred by Equinox for collection of any fees. Annual dues must be paid by 12:00 midnight on the anniversary date or Club privileges will be suspended and a new Initiation Fee will be required. Equinox reserves the right to charge balances and overdue balances to their current account under the Electronic Funds Transfer Authorization. If any check or credit card charge payable to Equinox is not honored, Management will assess a $25 charge for each check and credit card rejected and collect the current and past-due balance in any subsequent month. To the extent that Buyer and Member are not the same person, Member shall be obligated to make all payments that Buyer fails or has failed to make (including past and future payments for use of the Club).

13. **LOCKERS:** Lockers are provided solely for the benefit and convenience of members. Management will remove any articles left in a locker overnight. Members must provide their own lock. Rental lockers cannot be placed on freeze. Locker rental fees are non-refundable.

14. **VALUABLES AND PERSONAL PROPERTY:** Members are urged to avoid bringing valuables onto Club premises. Equinox shall not be liable for the loss of, or theft of, or damage to, the personal property of Member or guests, including items left in lockers, with the coat check or elsewhere in the Club.

15. **CHILDREN'S USE:** Children under 15 years of age may use the Club only during a previously announced Club-sponsored activity and must be accompanied by a parent AT ALL TIMES. Some children's programs require fees to be paid in advance. Equinox has the right to discontinue usage by any child whose behavior is offensive to any other member or who is unsupervised.

16. **MEMBERSHIP FREEZE POLICY:** Members may temporarily suspend their membership in accordance with the following terms:
   A) You may freeze your membership once per contractual year for a minimum of one (1) month and a maximum of three (3) consecutive months in one-month increments. A $30 fee will be charged per each month on freeze. If you freeze your membership during the first 12 months of your membership, you will be charged regular monthly dues until you meet the one year obligation, after which you will be charged the monthly freeze fee for the period of the freeze. If you have been a member for 12 months or longer on the day the freeze is effective, you will be charged the freeze fee up front and billing will be held for the approved duration of your freeze.
   B) Your freeze request must be done in person at the Club, online at http://www.equinox.com or by certified mail to Equinox - Member Services, One Park Avenue, 2nd Floor, New York, NY 10016 at least five (5) days before the intended freeze start date.
   C) If you are medically unable to use the Club, you can request a medical freeze for up to six (6) months (nine (9) months for pregnancy freeze). You must provide a doctor's letter at the time you request a medical freeze.
   D) You may not freeze your membership for any reason unless your account is in good standing. Members joining as part of a corporate program shall not be permitted to freeze their memberships.
   E) All freeze request s must be made in advance and no retroactive freezes are permitted.

17. **GROUP FITNESS RULES:** Allow enough time to sign in before each class. Do not enter a class late or leave early unless you give the instructor prior notice. If you are just starting Group Fitness or have a pre-existing injury or problems that prevent full participation, please discuss the situation with the Group Fitness Instructor before class. Aerobics shoes must be worn in all Group Fitness classes.

_____   6/10/13
(Member / Buyer Signature)        (Date)

## ADDITIONAL MEMBERSHIP AGREEMENT TERMS

18    DRESS CODE; Proper athletic attire and footwear are required.  No street clothes or dress shoes permitted in fitness area.  Management has the right to prevent the use of any equipment if the proper attire is not worn.

19.    PERSONAL TRAINING and SPA SESSSIONS; All sales of personal training and spa sessions are final and non-refundable.  Personal training and spa sessions expire 180 days from the date of purchase, unless indicated otherwise.

20.    NON-EQUINOX PERSONAL TRAINERS; Use of non-Equinox Personal Trainers in the Club is prohibited.  Members may not personal train other members.

21.    PRICING:  After the first 12 months of membership, Equinox reserves the right to increase the monthly or annual fee and will provide 30 days' notice to all Members regarding any such change in pricing; provided that pricing for Members who joined as part of a corporate program are subject to the pricing agreement between Seller and Member's employer or corporate sponsor.

22.    REVOCATION OF MEMBERSHIP; Equinox reserves the right to revoke and cancel this membership at any time for any reason, in which case Buyer/Member will, no later than fifteen (15) days after such cancellation, receive a refund of all monies paid pursuant to this Agreement (except initiation fee), provided that Seller may retain expenses incurred or the portion of the total price of this Agreement representing the services used or completed, and provided further, that Seller may demand the reasonable cost of goods and services which the Buyer/Member has consumed or wishes to retain after cancellation.

23.    WAIVER OF LIABILITY:  Member assumes full responsibility for his or her use of the facility and releases Equinox from any and all claims, including those caused in whole or in part, by the negligence of Equinox and shall indemnify Equinox, the owner of the club location the Member is utilizing, its affiliates, agents and employees against any and all liability arising out of use of the facilities.

24.    Complimentary Items:  Complimentary Items (including, but not limited to Spa sessions, personal training sessions, Pilates sessions, complimentary gift cards or other promotional items) may be distributed at the discretion of Equinox and have no cash value.  Only members with an active account in good standing may redeem complimentary items in accordance with their terms and complimentary items become null and void upon termination or expiration of membership for any reason.

25.    ALL ACCESS MEMBERSHIPS; All Access memberships do not include "E", Printing House, or Century City, WLA, Irvine or other locations so designated by Equinox.

_____        6/10/13
(Member/Buyer Signature)                                (Date)

Page 3 of 3