## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------X

LESLEY MCCARTHY and KIM
KENNEDY on behalf of themselves and
all other similarly situated,

CASE NO. 2:14-CV-00037-FSH-JBC
(Civil Action)

Plaintiffs,

**MOTION RETURNABLE:**

**April 7, 2014**

v.

EQUINOX HOLDINGS, INC.,
JOHN DOES 1-25.

Defendants.

-------------------------------------------------X

_____

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO DISMISS PURSUANT TO FED.R.CIV.P.12(b)(6)
_____

**LaROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP**
*Attorneys for Defendant
Equinox Holdings, Inc.*
83 South Street, 3rd Floor
Freehold, NJ 07728
(732) 409-1144

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ………………………………… 1

**STATEMENT OF FACTS** ………………………………………… 3

**ARGUMENT** ………………………………………………………… 6

**I.     PLAINTIFFS LACK STANDING AS TO COUNTS I AND IV, AS THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT**………………………………… 6

**II.     PLAINTIFFS' FIRST COUNT ALLEGING VIOLATIONS OF THE NEW JERSEY HCSA AND CFA MUST BE DISMISSED AS A MATTER OF LAW** ………………… 9

A. The Membership Agreement Fully Complies With the HCSA … 10

    i.     The Member's Total Payment Obligation is Conspicuously set Forth on the First Page of the Membership Agreement..………………………………… 10

    ii.     Equinox Maintains a Surety Bond on File With the Director of the Division of Consumer Affairs and the Membership Agreement Fully Complies With HCSA § 56:8-42(c) ………………………………………… 14

    iii.    The Membership Agreement Apprises the Member of Their Right to Cancel the Membership  Agreement Within 3 Days of Signing by Setting Forth the Exact Language Required by the HCSA ………………………………… 15

    iv.     Plaintiffs' Claims fall Outside the Scope of the Legislative Intent of the HCSA ……………………………………..… 16

B. Plaintiffs Fail to State a Claim Under the CFA ………………… 17

    i.     Plaintiffs Fail to Adequately Allege an Unlawful Practice by Equinox ……………………………………..…… 18

i

ii.  Plaintiffs Fail to Adequately Plead any Ascertainable loss
Sustained by Plaintiffs …………….………..……….    20

iii.  Plaintiffs Cannot Plead any Causal Relationship Between
any Unlawful Conduct and any Ascertainable Loss ……    22

III.  **PLAINTIFFS' SECOND COUNT MUST BE DISMISSED
BECAUSE THE RETAIL INSTALLMENT SALES ACT
IS INAPPLICABLE TO A HEALTH CLUB SERVICES
MEMBERSHIP AGREEMENT** …………………………..    22

A. The Membership Agreement is <u>NOT</u> a Retail Installment
Contract…………………………………………………    22

B. As the Membership Agreement is not a Retail Installment
Contract, it Need not Comply With N.J.S.A. § 17:16C-42 …….    28

IV.  **THE FEDERAL TRUTH IN LENDING ACT AND
REGULATION Z ARE ENTIRELY INAPPLICABLE**…..    29

A. The Legislative History of TILA and Regulation Z Confirm
Their Inapplicability in This Instance ……………………………    30

B. Equinox is <u>not</u> a "Creditor" and the Membership Transactions
at Issue are <u>not</u> "Consumer Credit Transactions"………………    31

C. Even if TILA and Regulation Z Were Applicable, the
Membership Agreement is Compliant……………………………..    34

V.  **PLAINTIFFS' CLAIMS UNDER THE TCCWNA
MUST FAIL AS A MATTER OF LAW**..………………    36

**RULE 12(b) (6) MOTION TO DISMISS STANDARD** ………………    38

**CONCLUSION** …..……………………………………………    39

# TABLE OF AUTHORITIES

**Cases**

Arcand v. Brother Intern. Corp., 673 F.Supp.2d 282 (Dist. N.J. 2009) ……   20

Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp.2d 347
(Dist. N.J. 2006)…………………………………………………………………   37, 38

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) …………………………   22,38

Campbell v. General Finance Corp of Virginia, 523 F. Supp 989
(W.D. Va., Charlottesville Div.1981) …………………………………………   31

Chafin v. Chafin, 133 S.Ct. 1017 (2013) …………………………………   7

Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286 (3d Cir.2005) …   6

Ford Motor Credit Co. v. Milhollin, 444 U.S. 555 (1980) …………………..  fn.22

Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC,
945 F.Supp.2d 543 (Dist. N.J. 2013) …………………………………………21

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997)……  fn.5

Joseph v. Norman's Health Club, Inc., 532 F.2d 86 (8th Cir. 1976) …………  31,32

Lewis v. Continental Bank Corp., 494 U.S. 472 (1990) ………………..…7

McCalley v. Samsung Electronics America, Inc., 2008 WL 878402
(Dist. N.J. Mar. 31, 2008) …………………………………………………   21, 38

McNair v. Synapse Group Inc., 672 F.3d 213 (3d Cir. 2012) ……………   6

Mickens v. Ford Motor Co., 900 F.Supp.2d 427 (Dist. N.J. 2012) ………..   20

Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973) ………   31

Perez v. Professionally Green, LLC, 73 A.3d 452 (N.J. Sup. Ct. 2013) ……   8, 20

Riley v. Potter, 2010 WL 125841 (Dist. N.J. Jan. 7, 2010) ………………… 38, 39

Sauro v. L.A. Fitness International, LLC, 2013 WL 978807
(Dist. N.J. Feb. 13, 2013) ………………………………………………18, 22, 37

United Consumer Financial Services Co. v. Carbo, 410 N.J. Super. 280
(App. Div. 2009) ……………………………………………………… passim

Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161 (3d Cir. 1998) ……… 20

Walker v. Wallace Auto Sales, Inc., 155 F.3d 927 (7th Cir.1998) ………… fn.26

Warth v. Seldin, 422 U.S. 490 (1975) ……………………………………… 7

**United States Constitution**

U.S. CONST. art. III, § 2 …………………………………………………… 6

**Federal Statutes**

15 U.S.C. § 1601 (2014)……………………………………………………… 29

15 U.S.C. § 1601(a) (2014) ………………………………………………… 31

15 U.S.C. § 1602(f) (2014)…………………………………………………… fn.28

15 U.S.C. § 1602(g) (2014) ………………………………………………… fn.27

15 U.S.C. § 1605(a) (2014) ………………………………………………… 33

15 U.S.C. § 1640 (2014) …………………………………………………… 32

**Federal Register**

12 C.F.R. § 226.1 …………………………………………………………… 29

12 C.F.R. § 226.2(a)(20) ………………………………………………..… passim

12 C.F.R. § 1026.2(10) ……………………………………………………… fn.24

12 C.F.R. § 1026.23(a)(1) ………………………………………… 36

12 C.F.R. § 1026.23(b)(1) ………………………………………… 35, 36

12 C.F.R. § 1026.23(b)(1)(v) ……………………………………… 35

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 12(b)(6) …………………………………………… passim

**New Jersey Statutes**

N.J. STAT. ANN. § 17:16C-1(b) (2014) ………………………… 23, fn.19

N.J. STAT. ANN. § 17:16C-42 (2014) …………………………… 28, fn. 21

N.J. STAT. ANN. § 45:7-82 (2014) ……………………………… fn. 19

N.J. STAT. ANN. § 56:8-2 (2014) ………………………………… 13

N.J. STAT. ANN. § 56:8-42(b) (2014) …………………………… passim

N.J. STAT. ANN. § 56:8-42(c) (2014) …………………………… 10, 14

N.J. STAT. ANN. § 56:8-42(e) (2014) …………………………… passim

N.J. STAT. ANN. § 56:8-42(f) (2014) …………………………… passim

N.J. STAT. ANN. § 56:8-42(g) (2014) …………………………… 14

N.J. STAT. ANN. § 56:12-15 (2014) ……………………………… 36, 37

N.J. STAT. ANN. § 56:12-16 (2014) ……………………………… passim

**Newspapers**

*Health Club Regulations Become Law,* STAR LEDGER, Aug. 13, 1987 … fn.11

**Office of the New Jersey Governor News Release**

Samerjan, John, *Office of the Governor, News Release*, Aug. 12, 1987 ……  fn.12

**Websites**

Office of Consumer Protection, *Listing of New Jersey Registered Health Spas*, February 21, 2014, http://www.njconsumeraffairs.gov/ocp/spa.pdf……….   fn. 10

Office of the Attorney General, *Consumer Alert: Health Clubs*, Jan. 14, 2013, http://www.nj.gov/oag/newsreleases13/pr20130114a.html ………………… fn. 9

State of New Jersey, Department of Banking & Finance, *Personal Finance – Frequently Asked Questions,* http://www.state.nj.us/dobi/division_consumers/finance/bankfaqs.htm …… fn.20

The Law Dictionary, *Featuring Black's Law Dictionary Free Online Legal Dictionary 2ⁿᵈ Ed.*, http://thelawdictionary.org/debt/.................................... fn.16

**Legal Dictionaries**

Black's Law Dictionary, 742 (3d Pocket ed. 2006) ……………………… fn.13

Black's Law Dictionary, 798 (6th ed. 1990) ……………………………… fn.16

Defendant Equinox Holdings, Inc. ("Equinox") submits this memorandum in support of its FRCP 12(b)(6) motion to dismiss the First Amended Complaint filed by Plaintiffs Lesley McCarthy and Kim Kennedy on the grounds that Plaintiffs lack standing to bring this action and/or have failed to state any legally cognizable claims against Equinox.

## PRELIMINARY STATEMENT

To this day, Plaintiffs are active members of the Equinox health club in Summit, NJ, enjoying the full benefits of health club membership.  They do not allege in their lawsuit that they have suffered any actual damages, nor do they contend that they have been harmed in any way by Equinox.  Instead, the gravamen of their Complaint is that certain provisions of the membership agreement (the "Membership Agreement") that they freely signed upon becoming members of the health club violate various state and federal consumer protection statutes.  Based solely upon this, Plaintiffs claim that they and members of their putative "class" are collectively entitled to substantial sums of money, and legal fees for their lawyer.

In this attorney-driven class action lawsuit[1], with tester Plaintiffs who have

---

[1] On January 16, 2014, Plaintiff's Counsel filed a virtually identical lawsuit against **Retrofitness, LLC**, in Superior Court of New Jersey, Law Division – Middlesex County (Ardino, et al. v. Retrofitness, LLC, et al., Docket No. L-362-14) similarly alleging violations of the HCSA, CFA, RISA, and TCCWNA.

suffered **no** actual loss and incurred **no** actual damages, the Complaint ignores Equinox's full compliance with the language and other requirements of the NJ Health Club Services Act ("HCSA")—a comprehensive regulatory regime enacted specifically to address consumer protection issues arising in the health club industry. As is evident from its face, the Membership Agreement clearly and conspicuously sets forth the member's "total payment obligation," informs the member of their right to notify Equinox of a cancellation of the Membership Agreement in writing via personal delivery at the health club within three days of entering into the Membership Agreement, and states that a bond is on file with the NJ Division of Consumer Affairs.

Faced with a Membership Agreement that fully complies with the HCSA, Plaintiffs instead focus their Complaint on exploring tortured legal theories and unripe factual scenarios in a misguided effort to find a landing spot within completely inapplicable state and federal statutes, *to wit*: the NJ Retail Installment Sales Act ("RISA"), the federal Truth in Lending Act ("TILA"), and the NJ Truth in Consumer Contract Warranty and Notice Act ("TCCWNA").

For example, in order to concoct a claim under TILA, Plaintiffs cast Equinox in the role of "lender" or "creditor," and a health club member as a "borrower" who incurs a "debt" upon becoming a club member.  Not surprisingly, such illogical mischaracterizations find no support in the case law.

Although some of the consumer protection statutes cited in the Complaint provide a private right of action for individuals who have legitimately been aggrieved, the Plaintiffs have not been damaged or aggrieved in any way. By nevertheless asserting these claims absent any injury or damages, Plaintiffs are impermissibly acting as a "private attorney general" on behalf of hypothetical and unidentified plaintiffs.

## STATEMENT OF FACTS

On October 10, 2013, Plaintiff McCarthy became a member of the Equinox health club located in Summit, NJ (the "Club") by entering into the subject Membership Agreement.[2] (Compl. Exh. A). As set forth in detail therein, McCarthy paid an initial sum of $253.48[3] to join Equinox. Her membership is described in the Membership Agreement as being month-to-month, with a minimum duration of 12 months, and continuing thereafter on a month-to-month basis until terminated by either McCarthy or by Equinox. As a health club member, McCarthy is entitled to full access and use of the health club whenever

---

[2] A fully executed copy of the Membership Agreement is attached as Exhibit A to the Affidavit of Kevin Morris (the "Morris Affidavit") dated March 12, 2014.

[3] This sum included $92.90 for the pro-rated monthly membership fee for the remaining days of October, $144.00 monthly membership fee for the upcoming month of November, and $16.58 for the applicable sales tax, all of which is listed line item by line item in the Membership Agreement (Compl. Exh. A, Pg. 1).

she wants, provided that before the first day of each month the monthly membership fee of $144.00 plus $10.08 in sales tax is paid in full.

On its first page, the Membership Agreement conspicuously sets forth the member's total payment obligation, *to wit*: (i) the initiation fee for the new member; (ii) the pro-rated initial monthly fee (for new members who join on a day other than the first day of the month); (iii) the monthly membership fee; (iv) the sales tax; and (v) the minimum duration of the Membership Agreement. Significantly, under the Membership Agreement each monthly payment of membership dues is paid prospectively; meaning that a member must first pay in full, and in advance, for that month of health club usage before she will be allowed to use the health club for that particular month (similar to rent for a residential lease). The first page of the Membership Agreement goes on to expressly set forth (directly above the signature line) the member's right to terminate their Club membership after the expiration of the 12 month period simply by providing 45 days' notice at the Club or by mail.

On the second page, the member's 3-day statutory right to cancel the Membership Agreement is included, setting forth ***verbatim*** the language required by § 56:8-42(e) of the HCSA. This cancellation right is repeated on the third page, followed by a second signature line for the member, where the member also

acknowledges receipt of the fully executed Membership Agreement.[4] The final page of the Membership Agreement includes additionally mandated terms under the HCSA (such as the member's statutory right to cancel the Membership Agreement in the event of the member's death, disability, or relocation to more than 25 miles from an affiliated Equinox club, as well as a provision stating that there is a bond on file with the Director of the Division of Consumer Affairs), followed by a third signature by the member.  As is plainly evident from the four corners of the Membership Agreement, Equinox was keenly aware of the requirements of the HCSA when it created its NJ form Membership Agreement, and complied with the letter of the law and all of the HCSA's requirements in all respects.

On June 10, 2013, Plaintiff Kennedy entered into a Membership Agreement[5] that contained the same terms as McCarthy's, with the only difference being that the $175 initiation fee had been waived by Equinox in McCarthy's case due to a

---

[4] In their Complaint, Plaintiffs speciously allege that "Equinox did not provide a copy of the Membership Agreement to McCarthy." (Compl. ¶ 38); (*See*, Morris Affidavit, Exh. A, Pg. 3).

[5] Generally, a district court entertaining a motion to dismiss may not consider matters extraneous to the pleadings.  An exception arises, however, when a document integral to or explicitly relied upon in the complaint is not attached to the complaint.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Equinox marketing promotion.[6]

## ARGUMENT

**I.     PLAINTIFFS LACK STANDING AS TO COUNTS I AND IV, AS THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT**

Article III of the US Constitution limits the power of federal courts to only hear actual "Cases" and "Controversies." U.S. CONST. art. III, § 2. "In order to have Article III standing to sue, a plaintiff bears the burden of establishing: "(1) [an] injury-in-fact ... that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] ... that the injury will be redressed by a favorable decision." Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 290–91 (3d Cir. 2005). In the *class action* context, that requirement (to show an injury-in-fact) must be satisfied by at least one named plaintiff. *See*, McNair v. Synapse Group Inc., 672 F.3d 213, 223 (3d Cir. 2012).

Therefore, "to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and

---

[6] Plaintiffs erroneously attached as Exhibit B to the Complaint an inapplicable and incomplete Equinox form New York membership agreement. Even a cursory review of it reveals that multiple material terms are missing (i.e. club location, credit card information, the amount of applicable sales tax, and date of commencement). On the same exact date, Kennedy signed the actual New Jersey Membership Agreement, a copy of which is annexed as Exhibit B to the Morris Affidavit. This error was brought to the attention of Plaintiffs' counsel prior to his amending the Complaint, but for reasons known only to him he attached it again as Exhibit B to the Amended Complaint.

likely to be redressed by a favorable decision." <u>Chafin v. Chafin</u>, 133 S.Ct. 1017, 1023 (2013); *citing*, <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). Federal courts may not "decide questions that cannot affect the rights of litigants in the case before them" or give opinions "advising what the law would be upon a hypothetical state of facts." <u>Id</u>.  If there is no actual or threatened injury to the plaintiffs, then there is no case or controversy before the court and the matter should be dismissed.  Even if the Legislature has granted a private right of action, "the plaintiff still must allege a distinct and palpable injury to himself." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).

Plaintiffs filed this action seeking damages against Equinox for allegedly violating their consumer protection rights, even while continuing to exercise at Equinox and enjoying the benefits of membership.  Critically, however, Plaintiffs fail to allege how, if at all, they have suffered, or been threatened with, an actual injury or damages due to the alleged non-compliance of the Membership Agreement with the consumer protection statutes cited in their Complaint.

First, and as fully set out in Points II through IV below, Equinox is in full compliance with the mandates of the HCSA.  Second, the only "injury-in-fact" that is even mentioned by the Plaintiffs in their Complaint is set out in Paragraphs 90(g) and 90(h), more particularly: 1) the amount of all monthly dues collected by Defendants subsequent to Defendants receiving a cancellation notice; and 2) the

amount of the postage that the Membership Agreement required them to pay in order to 'cancel…'" (Compl. ¶ 90(g), (h)). However, it is fatal to their Complaint that neither Plaintiff has pled that she cancelled or ever attempted to cancel her membership, whether in person or by mail.  Plaintiffs do not allege—nor can they—that they submitted a cancellation notice or actually paid a postage fee[7], this is because they are still members of the Club and are using it to this day.  Thus, the allegations of "injury-in-fact" in Plaintiffs' Complaint can be seen only as theoretical damages suffered by an *unnamed member* of the purported class, which is insufficient to defeat this motion.

Undeniably, the various consumer protection statutes enable enforcement by the NJ Attorney General, and contemplate civil fines for violations.  However, such statutes do *not* contemplate, and expressly prohibit, such relief being awarded to individuals who have not been *injured* by those alleged violations. Perez v. Professionally Green, LLC., 215 N.J. 388 (N.J. Sup. Ct. 2013).  To find otherwise is to disregard the intent of the legislature, the powers given to the Attorney General under the statute, and the plain language of the statute itself. Id. at 401.

---

[7] The Membership Agreement expressly allows the member to cancel their membership by *either:* (1) submitting written notice in person at the Club; or (2) submitting written notice by certified or registered mail to Equinox.  As a result, even if Plaintiffs did allege that they paid a postage fee in submitting their notice to cancel (which they have not), they would have incurred such postage fee at their own election.

Simply put, instead of seeking redress for damages personally incurred, Plaintiffs seek to act as a "private attorney general" alleging technical statutory violations that are not only meritless but that have caused no direct harm to them. To withstand dismissal however, Plaintiffs must allege that they ***personally*** have been injured. Plaintiffs' claims are thus insufficient to state a claim for which relief can be granted and Plaintiffs lack standing. Respectfully, there is no case or controversy before the Court as to Counts I and IV of the Complaint and those Counts should be dismissed on standing grounds.[8]

## II.   PLAINTIFFS' FIRST COUNT ALLEGING VIOLATIONS OF THE NEW JERSEY HCSA AND CFA MUST BE DISMISSED AS A MATTER OF LAW

Aside from the Plaintiffs' lack of standing set out above, the Plaintiffs' claims of HCSA violations are absolutely without merit. The Membership Agreement, with complete transparency, complies in every way with the proscriptions of the HCSA. Indeed, Plaintiffs fail to adequately allege: 1) any unlawful conduct on the part of Equinox; 2) any ascertainable loss suffered by the Plaintiffs; and 3) a causal connection between any unlawful conduct by Equinox

---

[8] Counts II and III are omitted from the standing argument because a violation of RISA or TILA would allow for a recovery of statutory damages even where a Plaintiff has not been aggrieved. However, as fully set out in Points III and IV below, RISA is wholly inapplicable because the Membership Agreement is ***not*** a retail installment contract and TILA is wholly inapplicable because Equinox is not a "creditor" and the membership transactions at issue are not "consumer credit transactions."

and any ascertainable loss incurred by Plaintiffs.  In sum, Plaintiffs' First Count must be dismissed in its entirety.

### A.    The Membership Agreement Fully Complies With the HCSA.

Below is a chart that sets out the Plaintiffs' allegations regarding HCSA violations by Equinox, the applicable sections of the HCSA, and the applicable Membership Agreement provisions refuting the Plaintiffs' contentions:

| Plaintiff's Allegations | Relevant Section of Statute | Provisions from the Membership Agreement |
|---|---|---|
| -No reference in Membership Agreement to bond being on file. (Compl. ¶ 86). | -Membership Agreement must state that there is a bond on file.  **N.J. STAT. ANN. § 56:8-42(c)** | -Membership Agreement states that there is a bond on file. (Compl. Exh. A, Pg. 4, ¶ 29). |
| -Member not informed in Membership Agreement of member's right to notify Equinox of cancellation within 3 days of joining health club. (Compl. ¶ 86). | -Membership Agreement must inform member of rights to notify of cancellation.  **N.J. STAT. ANN. § 56:8-42(e)** | -Membership Agreement sets forth all language required by statute verbatim. (Compl. Exh. A, Pg. 2). |
| -Member's "total payment obligation" not set forth in Membership Agreement. (Compl. ¶ 86). | -Membership Agreement must set forth member's total payment obligation. **N.J. STAT. ANN. § 56:8-42(b)** | -Membership Agreement sets forth member's total payment obligation. (Compl. Exh. A, Pg. 1). |
| -Membership Agreement contains language barred by **N.J. STAT. ANN. § 56:12-16.** (Compl. ¶ 126). | -If Membership Agreement states provisions unenforceable in some states, must specify which provisions are not unenforceable in NJ.  **N.J. STAT. ANN. § 56:12-16** | -Frivolous assertion; the complained of language is absent from the Membership Agreement. (Compl. Exh. A). |

### i.    The Member's Total Payment Obligation is Conspicuously set Forth on the First Page of the Membership Agreement.

Notwithstanding the Plaintiffs' conclusory assertion, the Membership Agreement is fully transparent and in full compliance with § 56:8-42(b) of the

HCSA.  The member's "total payment obligation" <u>is</u> fully and conspicuously set out on the ***first*** page of the Membership Agreement.

HCSA § 56:8-42(b) states: "A health club services contract shall specifically set forth in a conspicuous manner on the first page of the contract the buyer's total payment obligation for health club services to be received pursuant to the contract."  N.J. STAT. ANN. § 56:8-42(b) (2014).  The Membership Agreement, which provides for a month-to-month membership with a 12-month minimum duration, conspicuously apprises the member of their total payment obligation by specifically ***listing*** the member's: (i) initiation fee; (ii) pro-rated initial monthly fee (in the event the member joins Equinox as a member after the first day of a month); and (iii) the minimum duration of the Membership Agreement.  (Compl. Exh. A, Pg. 1).

In addition, the bottom half of the first page of the Membership Agreement (regarding electronic funds transfer) reappraises the member of the monthly billing rate—setting out the monthly principal amount and requisite sales tax due—as well as informs the member of the date on which Equinox will charge the member's card for the monthly fee obligation. There are no hidden fees or hidden costs to be found anywhere in the Membership Agreement, nor are any alleged in the Complaint; the member is fully appraised of the ***exact*** amount that he or she is

11

being charged at the time of sign-up and the *exact* amounts that the member will thereafter incur on a monthly basis.

With such transparency, it is entirely disingenuous for Plaintiffs to contend that the Membership Agreement somehow violates HCSA § 56:8-42(b). Interestingly, Plaintiffs fail to acknowledge the fact that the list of fees and other charges that is itemized in the Membership Agreement is detailed and transparent. Instead, Plaintiffs posit a self-serving claim (that appears to be based entirely upon counsel's personal opinion) that Equinox has a statutory obligation to do the math and add up the sum total of the monthly membership payments for the Membership Agreement's minimum 12-month duration.

Contrary to Plaintiffs' contention however, the Membership Agreement does not automatically terminate after 12 months, but continues on a month-to-month basis until the member elects to terminate his or her membership. Thus, the member's total payment obligation is set forth in the most transparent manner possible. If Equinox were to actually add up and set out a 12-month total at the time the member joins the health club, then this aggregated amount would potentially be deceptive because Equinox would necessarily have to assume that each and every member would remain a member at the health club for precisely 12 months.

12

For example, if a member opted to terminate his or her membership with Equinox after 15 months, at the time of the contract signing Equinox would have been in no better position than the member to know whether that member's membership would have lasted 6 months, 12 months, or 15 months.  Accordingly, at the time that the member joined the health club, had Equinox set forth in the Membership Agreement a payment obligation representing just the minimum duration of the Membership Agreement (12 months), such amount would have been entirely speculative and ultimately inaccurate.  It must be emphasized that the HCSA requires that the Membership Agreement set out the **_"total"_** payment obligation, not the "minimum" payment obligation or "maximum" payment obligation.[9]  In any event, the clear and overriding purpose for this provision of the statute is to insure transparency in pricing and financial arrangements.

Moreover, Plaintiffs' tortured position is also at odds with subsections (f) and (g) of HCSA § 56:8-42, which state that a health club services contract shall provide that a member can cancel the Membership Agreement in the event of the

---

[9] On its webpage, the Office of the Attorney General provides guidance to individuals who are considering joining a health club by notifying them that they are entitled to a written contract that **_lists_** the consumer's total payment obligation on the first page of the contract. *See*, http://www.nj.gov/oag/newsreleases 13/pr20130114a.html. The Equinox Membership Agreement in fact **_lists_** the member's initiation fee, the member's monthly payment obligation, and sets forth the sales tax due on each such monthly payment.

member's death, disability, or where the member moves to a location more than 25 miles from an affiliated health club.  N.J. STAT. ANN. § 56:8-42(f), (g) (2014). Under such contingencies (which are not uncommon)— were Equinox to have tallied that member's itemized payment obligations for a 12-month minimum at the time the member signed the Membership Agreement—a member could easily misinterpret that total sum as a legal obligation to pay Equinox monthly fees for the remainder of the 12-months.

Equinox sets forth a member's total payment obligation in a transparent and statutorily compliant manner that guarantees uniformity regardless of how long any given member remains with Equinox.

### ii.  Equinox Maintains a Surety Bond on File With the Director of the Division of Consumer Affairs and the Membership Agreement Fully Complies With HCSA § 56:8-42(c).

Plaintiffs frivolously contend in their Complaint that: (i) the Membership Agreement violates § 56:8-42(c) of the HCSA by failing to state that Equinox has filed with the Division of Consumer Affairs "a bond, irrevocable letter of credit or securities, moneys or other security" (Compl. ¶¶ 82, 86); and (ii) that Equinox has failed to maintain a bond on file with the Division of Consumer Affairs for the protection of its members. (Compl. ¶¶ 80, 81).

These specious assertions are refuted by the plain language of the Membership Agreement.  The bottom of page 4 states: **"BOND ON FILE:**

14

**Equinox has filed a bond, letter of credit or other security with the Division of Consumer Affairs of the State of New Jersey.  This has been filed to protect buyers who are damaged or suffer any loss by reason of breach of this contract by Equinox or bankruptcy of Equinox."** (Compl. Exh. A, Pg. 4, ¶ 29).

In any event, Equinox does in fact have a bond on file with the Division of Consumer Affairs. (*See*, Morris Affidavit, Exh. C).  Whether or not a health club maintains a surety bond on file with the Division of Consumer Affairs is a matter of ***public record.***[10]  As such, lack of due diligence on the part of Plaintiffs can be the only explanation for this frivolous contention.

### iii.    The Membership Agreement Apprises the Member of Their Right to Cancel the Membership Agreement Within 3 Days of Signing by Setting Forth the Exact Language Required by the HCSA.

Plaintiffs further allege that the Membership Agreement violates the HCSA by failing to inform the member of their right to notify Equinox of a cancellation in writing via personal delivery to the address specified in the Membership Agreement. (Compl. ¶¶ 85, 86).  However, the plain language of the Membership Agreement entirely refutes this claim also.  Page 2 of the Membership Agreement

---

[10]  Office of Consumer Protection, *Listing of New Jersey Registered Health Spas*, February 21, 2014, http://www.njconsumeraffairs.gov/ocp/spa.pdf.  This webpage from the Division of Consumer Affairs provides a list of each registered Health Club in the State of New Jersey.  The Equinox fitness club located in Summit, New Jersey is listed on the webpage.  Equinox must have a bond on file in order to register with the Division of Consumer Affairs.

expressly informs the member of his or her right to cancel the Membership Agreement in writing via personal delivery. (Compl. Exh. A, Pg. 2).  The language used by Equinox in its Membership Agreement is *verbatim* from HCSA § 56:8-42(e).

### iv.   Plaintiffs' Claims Fall Outside the Scope of the Legislative Intent of the HCSA.

Not only is the Membership Agreement in full compliance with the mandates of the HCSA, but Plaintiffs' lawsuit claims do not comport with the legislative purpose of the HCSA.  The New Jersey Legislature enacted the HCSA to provide specific consumer protections in response to specific health club abuses pervading the state of New Jersey in the mid-1980's.  The Legislature was primarily concerned with health clubs going out of business soon after selling "lifetime" memberships to consumers, leaving consumers aggrieved without any safe harbor of financial restitution available to them.[11]

---

[11] When the HCSA was first enacted in 1987, co-sponsor Senator Richard Codey stated that "[t]oo many people have found out the hard way that so-called lifetime memberships are only good for the life-time of the corporation—not the lifetime of the health club member." Assemblyman John Rocco—another co-sponsor—likewise took specific exception to "fly-by-night health club operators [having] no assets to liquidate if the business fails…[leaving] members and other creditors out in the cold with no recourse to recoup their money." *Health Club Regulations Become Law,* STAR LEDGER, Aug. 13, 1987.

Indeed, soon after the HCSA was signed into law, the Office of the Governor issued a news release stating that the sum and substance of the HCSA is intended to "supplement the Consumer Fraud Act to protect consumers against fraudulent practices when health spas go out of business and fail to meet their obligations."[12]   What can be fairly gleaned from this is that the Legislature intended that the HCSA require health clubs to set aside financial restitution so that an aggrieved consumer would be protected in the event of some wrongdoing on the part of a health club.

Plaintiffs' instant action seeks to impermissibly stretch the penumbral protections offered by the HCSA.  Plaintiffs—while continuing to receive the full benefits of their bargain, who have not terminated or even attempted to terminate their memberships at any time since becoming members of the health club, and who have not sustained any ascertainable loss—audaciously identify alleged violations of the HSCA that ultimately challenge nothing substantive. Respectfully, such misuse of the HCSA's private right of action was not what the New Jersey Legislature had in mind and should not be countenanced by the Court.

### B.    Plaintiffs Fail to State a Claim Under the CFA.

In order "to state a claim under the CFA, the plaintiff must allege: (i) an unlawful practice by the defendant; (ii) an ascertainable loss suffered by the

---

[12] Samerjan, John, *Office of the Governor, News Release*, Aug. 12, 1987.

plaintiff; and (iii) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Sauro v. L.A. Fitness International, LLC, 2013 WL 978807, *4 (Dist. N.J. Feb. 13, 2013).  In this instance, Plaintiffs fail to adequately allege any of the three elements required to support a CFA claim.

    **i.**        **Plaintiffs Fail to Adequately Allege an Unlawful Practice by Equinox.**

In a strained effort to plead an "unconscionable commercial practice," Plaintiffs assert a non-existent violation of HCSA § 56:8-42(b) regarding the Membership Agreement allegedly failing to set out a total payment obligation. (Compl. ¶ 90(f)).  Equinox's compliance with HCSA § 56:8-42(b) is fully set out in subsection A (i) above. Contrary to Plaintiffs' misguided contention the member's total payment obligation is conspicuously set forth on the first page of the Membership Agreement.

Second, without setting forth any facts in support, Plaintiffs summarily conclude that Equinox's cancellation and/or billing practices constitute an "unconscionable commercial practice…because they impose unreasonable conditions for the sole purpose of discouraging and impeding 'cancellations'…and thereby cause buyers to pay for unwanted services." (Compl. ¶¶ 3, 90(e)).

The Equinox 3-day cancellation policy is set out on the second page of the Membership Agreement, setting forth the language required by § 56:8-42(e) of the HCSA verbatim.  This statutory right is also repeated on the third page of the

Membership Agreement which is signed by the member.  (Compl. Exh. A, Pg. 2, 3). The potential member is free to accept or reject the terms of the Membership Agreement prior to becoming a member of the health club.  Indeed, both New Jersey law and the Membership Agreement itself provide the member with a 3-day right to cancel the Membership Agreement outright if, at second thought, the member finds any of the terms and conditions set forth in the Membership Agreement to be onerous or disagreeable – or if they simply change their mind.

In the event that Plaintiffs' vague allegation refers to the propriety of the 45-day termination notice, the Equinox membership termination policy is also set forth on the *first* page of the Membership Agreement and is thereby entirely transparent.  (Compl. Exh. A, Pg. 1).  The HCSA (an entire comprehensive legislative scheme specifically targeted at the health club industry) contains *no* limitation regarding a written notice membership termination requirement.   In addition, Equinox is unaware of a single New Jersey decision holding that a health club membership agreement requiring a 45-day written termination notice is, in and of itself, "unconscionable."  In sum, there is nothing about the fully disclosed 45-day notice period that can be considered "unconscionable" or "onerous" as a matter of fact or law.

In the context of a claim arising under the CFA, the Third Circuit states that

an unconscionable[13] practice is one that "necessarily entails a lack of good faith, fair dealing, and honesty… [m]ere customer dissatisfaction does not constitute consumer fraud" Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998).   Respectfully, there is nothing in the Membership Agreement that even comes close to suggesting a lack of good faith, fair dealing, or honesty on the part of Equinox. Id.   And, of course, it is not alleged that the Plaintiffs cancelled or attempted to cancel their membership at Equinox, and thus have no standing to assert this claim.

### ii.   Plaintiffs Fail to Adequately Plead any Ascertainable loss Sustained by Plaintiffs.

Plaintiffs fail to plead that they sustained *any* ascertainable loss in connection with Equinox's purported failure to set forth a member's total payment obligation.  Accordingly, said claim must be dismissed as a matter of law. Mickens v. Ford Motor Co., 900 F.Supp.2d 427, 446 (Dist. N.J. 2012) ("To survive a motion to dismiss for failure to state a claim arising under the [CFA], a complaint must sufficiently allege an ascertainable loss"); Perez v. Professionally Green, LLC, 73 A.3d at 460 ("[T]he plain language of the [CFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action"); Arcand v.

---

[13] It is well established that an "unconscionable" practice is one that is defined as "unscrupulous…showing no regard for conscience…affronting the sense of justice, decency, or reasonableness." Black's Law Dictionary, 742 (3d Pocket ed. 2006).

Brother Intern. Corp., 673 F.Supp.2d 282, 289 (Dist. N.J. 2009) ("Plaintiffs' [CFA] claim must be dismissed because Plaintiffs fail to allege that they suffered an ascertainable loss due to [defendant's] unlawful conduct"); Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC, 945 F.Supp.2d 543 (Dist. N.J. 2013) (stating that one of the main purposes of the CFA is to compensate a victim for his actual loss).

Second, Plaintiffs' allegations of "ascertainable loss" set out in ¶ 90(g) and (h) appear to pertain to Equinox's 45-day notice membership termination provision, more particularly: 1) the amount of all monthly dues collected by Defendants subsequent to Defendants receiving a cancellation notice, and 2) the amount of the postage that the Membership Agreement required them to pay in order to 'cancel'…"  (Compl. ¶ 90(g), (h)).  As set out in Point I above, neither Plaintiff has ever attempted to cancel her membership, whether in person or by mail.  As neither Plaintiff has availed or attempted to avail herself of the three day cancellation provision or the 45 day membership termination process for their respective memberships, certainly neither can complain of having incurred fees for any "unwanted services" (Compl. ¶90(e)), postage for cancellation notices (Compl. ¶90(h)), or post-cancellation membership charges (Compl. ¶90(g)).  Accordingly, these allegations constitute bald assertions and unsupported legal conclusions that are cast in the form of factual allegations. McCalley v. Samsung Electronics

21

America, Inc., 2008 WL 878402, *3 (Dist. N.J. Mar. 31, 2008).  Such a formulaic recitation of a cause of action under the CFA—devoid of underlying factual support—is the exact type of defective pleading the U.S. Supreme Court has held cannot survive a 12(b)(6) motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

### iii.   Plaintiffs Cannot Plead any Causal Relationship Between any Unlawful Conduct and any Ascertainable Loss.

Lastly, as Plaintiffs fail to adequately set out any "unlawful practice" by Equinox or any "ascertainable loss" incurred by Plaintiffs, the Complaint entirely fails to plead any causal relationship between any unlawful conduct and the Plaintiffs' ascertainable loss.  See, Sauro v. L.A. Fitness International, LLC, 2013 WL 978807 at *8.  For the reasons set out above, no claim under the CFA can be supported in this instance and Plaintiffs' claims under the First Count of the Complaint must be dismissed in their entirety as a matter of law.

## III.   PLAINTIFFS' SECOND COUNT MUST BE DISMISSED BECAUSE THE RETAIL INSTALLMENT SALES ACT IS INAPPLICABLE TO A HEALTH CLUB SERVICES MEMBERSHIP AGREEMENT

### A.   The Membership Agreement is NOT a Retail Installment Contract.

A "retail installment contract" is defined by RISA as being "any contract… entered into in this State between a retail seller and a retail buyer evidencing **an agreement to pay the retail purchase price of goods or services… in two or**

more **installments** **over a period of time.**" N.J. STAT. ANN. § 17:16C-1(b) (2014); (emphasis added).

The health club membership is not an annual membership.  As expressly set forth in the Membership Agreement, membership is on a ***month-to-month*** basis with each monthly payment having to be made by the member ***in full*** and ***in advance*** before the member is allowed to use the Club for the ensuing month. Because each monthly payment must be paid in full as a condition of club membership, there are no "installment" payments.

The Membership Agreement is most akin to a one-year residential lease, where the renter agrees to pay rent to a landlord in advance each month for a minimum duration (e.g. a one year lease).  In exchange, the tenant gets to occupy that unit for the approximately 30 day period covered by the rent payment that was paid to the landlord at the beginning of the month.  Under Plaintiffs' theory, RISA would even apply to residential leases, which certainly was not the intent of the NJ Legislature.  If one were to follow Plaintiffs' tortured interpretation of RISA to its logical extreme, it would necessarily follow that any agreement requiring monthly payments over an agreed upon duration would necessarily be a retail installment contract, even personal services contracts and also flat monthly retainer agreements for law firms.  Such an overarching interpretation is not what RISA contemplates and should not be entertained by this Court.

23

Unlike with traditional retail installment contracts, for example the sale of an appliance or piece of furniture, here Equinox does not extend any credit to its members.  In fact, absent payment in full and in advance by the member, the member is not permitted to use the health club.  Meaning, at the time of the Membership Agreement, no credit is extended by Equinox and the member therefore does not incur a debt.[14]

Even assuming, *arguendo*, that the monthly obligation under the Membership Agreement were to be labeled an "installment," RISA would still require that the retail purchase price be payable in ***more than one*** installment—a condition that is simply absent from the Membership Agreement.  Under the Membership Agreement, a member pays for each month of services ***individually***.  The "retail purchase price" is the amount due for ***that month only*** (not the total yearly sum).  Therefore, the "retail purchase price" is being paid ***in full*** (i.e. one (1) "installment") each time a month accrues.  By definition, therefore, the Membership Agreement cannot be considered a retail installment contract if there is not more than one installment.

---

[14] By way of a hypothetical, if Equinox were to extend the payments of the monthly dues into weekly payments after they had become due, then the members would be paying installments.  The Membership Agreement does not allow for such a practice, and the entire monthly payment is due in full at the beginning of the month.

Moreover, unlike traditional retail installment transactions where the retail buyer and retail seller receive the full benefit of the bargain at the time the contract is signed, a member of Equinox does *not* receive the full benefit of 12-months of club membership at the time of entering into the Membership Agreement. Likewise, Equinox similarly does not receive the unconditional right to receive twelve payments.[15]   At the time of contract signing, Equinox only receives payment for the ensuing month; the member in turn only receives the right to use the Club for the paid month.

Contrast the Membership Agreement with a situation where a consumer purchases an appliance by way of an actual retail installment contract.  With this purchase, the consumer takes full possession of the appliance at the time the contract is signed in exchange for an *unconditional* promise to remit installment[16] payments for the full purchase price of the appliance.  Accordingly, at the time the

---

[15] Under the HCSA, a member can cancel the Membership Agreement in the event of death, disability, or relocating more than 25 miles from an affiliated Equinox health club.  *See*, N.J. STAT. ANN. § 56:8-42(f), (g) (2014).

[16] While not defined by RISA, Black's Law Dictionary defines "installment" as "the partial payment of a *debt*" or "different portions of the same *debt* payable at different successive periods as agreed".  Black's Law Dictionary, 798 (6th ed. 1990).  As a result, the existence of an installment hinges on the existence of a *debt*.  A "debt" is "a sum of money which has been promised at a future day as to a sum of money *now due and payable*."  The Law Dictionary, *Featuring Black's Law    Dictionary    Free    Online    Legal    Dictionary    2nd    Ed.*, http://thelawdictionary.org/debt/.  Accordingly, if a sum of money is not "NOW" due and payable, subsequent payments are not considered "installments."

25

consumer enters into the retail installment contract, a *debt* is created, which is satisfied once the final installment payment is made.   On the date of the transaction, the retail seller, in turn, relinquishes full possession of the appliance in exchange for receiving the consumer's *unconditional* promise to pay off the appliance in installments over time.  The consumer there, unlike in the context of a health club membership transaction, is not relieved of his/her payment obligations for the appliance in the event the consumer dies, becomes disabled, or moves more than 25 miles away from the store where the appliance was purchased.  In full compliance with the HCSA, an Equinox member can terminate their Membership Agreement under each of those circumstances, extinguishing Equinox's right to receive future payments from the member. In fact, a member under such contingencies would even be entitled to a pro rata refund for the unused portion of the month.[17]  This is a crucial distinguishing factor from the appliance example set forth above where even if the purchaser dies, the seller still has a right to collect any unpaid amounts because the purchaser received the appliance at the time of contract.

Further distinguishing the Membership Agreement from a retail installment contract are Equinox's limited legal rights in the event a member does not make a

---

[17] *See,* N.J. STAT. ANN. § 56:8-42(f), (g) (2014)

monthly membership payment. Unlike traditional retail installment contracts where the retail seller would be entitled to re-possess the appliance and/or sue the consumer for the entire purchase price of the appliance following a default by the consumer, here Equinox would not be entitled to sue to collect the payments prospectively due under the Membership Agreement until the requisite time period has elapsed (like a residential lease).[18] In such an event, Equinox can only prohibit the member from accessing the Club until the arrears are paid and can only sue to collect the payment that was due for that particular month.

Significantly, there is not a single New Jersey decision about which we are aware that holds that a health club membership agreement, which is subject to its own regulatory regime (the HCSA), is also deemed to be a retail installment contract and thus also subject to RISA.  Moreover, neither the text nor the legislative history of the HCSA makes **any mention** of "retail installment contracts" or implicate RISA in any manner.  Had the Legislature intended that the HCSA be subject to and/or supplement the mandates of RISA, then such an intention would be either explicitly or impliedly referenced at some point in the

---

[18]   Defendant would highlight that there is no acceleration clause in the Membership Agreement, nor is there any language even hinting that Equinox is ever entitled to the full 12 month amount before the 12 months have passed.

HCSA.[19]

### B.   As the Membership Agreement is not a Retail Installment Contract, it Need not Comply With N.J.S.A § 17:16C-42.

Plaintiffs' allegations regarding the Membership Agreement's purportedly unlawful $25 dishonored check fee is entirely misplaced. (Compl. ¶¶ 98-99).  As fully set forth in subsection A above, the Membership Agreement need not comply with § 17:16C-42 because the Membership Agreement *is not a retail installment contract*. Notwithstanding its inapplicability, it is important to note that when a member bounces a check or when a credit card transaction is denied, Equinox is charged a fee by its bank, as it is customary and permissible for banks to charge these fees.  Thus, the $25 fee assessed by Equinox merely offsets the fee that its bank charges to Equinox.[20]

---

[19] By way of example, there is an *explicit reference* to a retail installment contract in the definitional section of the New Jersey Embalmers and Funeral Directors Act (the "EFD Act").  *See*, N.J. STAT. ANN. § 45:7-82 (2014).  The EFD Act defines a retail installment contract in a manner substantially similar to the definition set forth for a retail installment contract under RISA.  *Compare*, Id. with Id. at § 17:16C-1(b).   The Legislature intended that the EFD Act—at least in certain situations—be subject to the mandates of RISA.

[20] As made clear by the website of New Jersey's Department of Banking & Finance, there is no state or federal law that limits what a bank can charge for its fees…the open market normally dictates the limit of these fees as customers have the choice of what institution they wish to do business with.  State of New Jersey, Department of Banking & Finance, *Personal Finance – Frequently Asked Questions,* http://www.state.nj.us/dobi/division_consumers/finance/bankfaqs.htm.

In conclusion, although a RISA violation may allow for a statutory recovery even though a consumer has not been personally injured,[21] as stated above, the Membership Agreement is ***not a retail installment contract.***

## IV. THE FEDERAL TRUTH IN LENDING ACT AND REGULATION Z ARE ENTIRELY INAPPLICABLE

In the Third Count of the Plaintiffs' Complaint, and in a misguided and seemingly desperate effort to render the Membership Agreement subject to the federal statutory and regulatory strictures of TILA and Regulation Z (*See,* 15 U.S.C § 1601, *et seq.*; 12 C.F.R. § 226.1, *et seq.*),[22] Plaintiffs gratuitously mischaracterize their membership enrollment as a "consumer credit transaction" (Compl. ¶105), the Membership Agreement as a "credit sale" (Compl. ¶104), and Equinox as a "creditor." (Compl. ¶103). In their haste and perhaps confusion, however, Plaintiffs inconsistently allege that the membership enrollment

---

[21] United Consumer Financial Services Co. v. Carbo, 410 N.J. Super. 280, 306 (App. Div. 2009) (finding that it is immaterial that an unauthorized fee for a returned check was neither assessed against nor collected from a member of the class as § 17:16C-50 was violated by merely contracting for the right to assess a check fee unauthorized by RISA).

[22] Under its authority "to elaborate and expand the legal framework governing commerce in credit," and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See,* Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559–60 (1980). The purpose of Regulation Z is to promote the informed use of consumer credit by requiring disclosures about its terms and cost. Id. at 559.

transaction is both an "open-end credit"[23] plan (Compl. ¶4) and a "closed-end credit"[24] plan (Compl. Third Count).[25]   The confusion that Plaintiffs exhibit in their own pleadings is most likely caused by the reality that the membership transaction between Equinox and the Plaintiffs is *not* a consumer credit transaction at all.

### A. The Legislative History of TILA and Regulation Z Confirm Their Inapplicability in This Instance.

The legislative history[26] behind TILA and Regulation Z reveals their complete inapplicability to the case at bar.   TILA, the Truth in ***Lending*** Act, was

---

[23] "Open-end credit means consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 226.2(a)(20).

[24] "Closed-end credit means consumer credit other than 'open-end credit'…" 12 C.F.R. § 1026.2(10).

[25] In Paragraph 4 of the Complaint, Plaintiffs allege that Equinox violated TILA and Regulation Z "by using Membership Agreements which fail to provide in a clear and conspicuous tabular form the mandatory account-opening disclosures for an open credit plan." (Compl. ¶ 4).  However, in the Third Count of the Complaint, which sets out the Plaintiffs claims under TILA and regulation Z, Plaintiffs define the subject transaction as a "closed end credit plan" and removed the allegations regarding the mandatory disclosure requirements for open end credit plans which had been present in the initial Complaint.  (Compl. ¶¶ 100 – 119).

[26] Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." *See,* 15

adopted to foster competition among financial institutions engaged in the extension of ***consumer credit***, to ensure meaningful disclosure of credit terms to the consumer, and to avoid the uninformed use of ***credit*** by consumers. *See*, 15 U.S.C. § 1601(a). Appropriately, TILA is found under Title 12: "Banks and Banking" section of the U.S. Code.

"The fundamental purpose of [TILA]…is to require creditors to disclose the 'true' cost of consumer credit, so that consumers can make informed choices among ***available methods of payment***." Joseph v. Norman's Health Club, Inc., 532 F.2d 86, 90 (8th Cir., 1976) (emphasis added); *citing*, Mourning v. Family Publications Service, Inc., 411 U.S. 356, 364-65 (1973). "For the requirements of the Truth-In- Lending Act to be involved, there must be (1) a creditor, (2) a debtor who is natural person, and (3) a consumer credit transaction." Campbell v. General Finance Corp of Virginia, 523 F.Supp 989, 992 (Dist. Ct. W.D. Va., Charlottesville Div. 1981).

### B. Equinox is <u>not</u> a "Creditor" and the Membership Transactions at Issue are <u>not</u> "Consumer Credit Transactions."

Equinox is not a "creditor" as defined by TILA and Regulation Z, and there is no extension or offer of ***<u>credit</u>*** being made by Equinox to a prospective health

---

U.S.C. § 1601(a); *See also,* Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 931 (7th Cir. 1998) (citing cases which state the purpose of TILA).

club member in connection with the health club membership transaction.

TILA at 15 U.S.C. § 1640, provides for a private right of action for damages where a ***creditor***[27] fails to make certain financial disclosures required by the Act. "Congress defined 'creditor' broadly to include all who regularly extend, or arrange for the extension of (consumer) credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise…The original Act thus contemplated two classes of creditor…First are the 'extenders' of credit, those who actually provide the funds and carry the risk of the obligation. Second are the 'arrangers' of credit, those who negotiate a consumer credit transaction on behalf of a third-party extender…Only those who 'regularly,' that is, in the ordinary course of business, arrange or extend credit, are subject to the disclosure requirements." Joseph v. Norman's Health Club, Inc., 532 F.2d at 91.[28]

---

[27] "Creditor" is defined by the Act as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." See, 15 U.S.C. § 1602(g).

[28] The "term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. §1602(f).

Equinox does not "regularly extend credit" or "arrange for" the extension of consumer credit, for which payment of a finance charge[29] is required.   In the subject membership transaction, there is no financed amount of the membership fee, there is no finance fee involved, and there are no financing terms.   Equinox does not extend or offer ***any*** credit to a member.  Unlike a typical consumer credit transaction where a consumer enjoys the benefits of the bargain prior to making full, or even a partial payment (e.g., taking home an appliance), an Equinox member is not entitled to use the health club until payment is received ***in full*** and ***upfront***.

Plaintiffs seemingly fixate on the provision in the Membership Agreement that the Plaintiffs are contractually obligated to remain a member for at least 12 months.   However this provision (which in any event is not an unconditional obligation—see above at Point III (A)) is not the equivalent of Equinox transferring an amount of money to Plaintiffs which is to be "repaid" to Equinox over time.

The HCSA similarly does not view a health club membership transaction as consumer credit transaction. The HCSA mandates that under certain circumstances

---

[29] The Act defines "finance charge" as: "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  *See,* 15 U.S.C. § 1605(a).

a health club member be allowed to cancel the contract and have no further obligations for monthly membership dues.[30]   In so providing, the HCSA negates the possibility that a consumer under a health club services contract incurs an unconditional "debt" at contract signing that must be "repaid."

### C. Even if TILA and Regulation Z Were Applicable, the Membership Agreement is Compliant.

In their Amended Complaint, Plaintiffs entirely revamped the Third Count by re-characterizing the health club membership transaction as a "closed end credit" transaction rather than as an "open end credit" transaction (as was the case in the original Complaint).  Confusingly, Plaintiffs in their response to the Court's *Sua Sponte* Order on February 6, 2014 revert back to the seemingly abandoned argument from the original Complaint and re-characterize the transaction as an "open-end credit plan" by referencing the tabular form disclosure requirement (which only applies to open-end credit).  *See*, 12 C.F.R. § 1026.5.

The Membership Agreement however is not an "open-end credit plan."  In order to constitute an "open-end credit plan" under 12 § C.F.R. 226.2(a)(20), the "creditor" must be able to impose a finance charge "from time to time on an outstanding unpaid balance" ***and*** the credit extended to the consumer must

---

[30] In the event a member dies, moves more than 25 miles away from the Club, or becomes disabled after a payment has occurred, the member would be entitled to receive a pro-rata ***refund*** from Equinox for the days that the member cannot use. N.J. STAT. ANN. § 56:8-42(f), (g) (2014).

generally be made available "to the extent that any outstanding balance is repaid." (*See,* 12 C.F.R. § 226.2(a)(20)).   In addition to the fact that Equinox is not a "creditor" and the Membership Agreement does not extend "credit," the Membership Agreement does not impose a "finance charge" in any sense of the term and, more importantly, does not expressly allow Equinox to impose such a charge. Moreover, Plaintiffs have not alleged how the Membership Agreement makes "credit" available to the member.   Therefore, the Membership Agreement cannot be considered an "open-end credit" plan subject to the tabular form requirements of Regulation Z.

Even assuming *arguendo*, that TILA and/or Regulation Z did apply, the Membership Agreement would in any event comply with the mandatory disclosure requirements of Regulation Z requiring closed-end credit transactions to disclose the total sale price (Compl. ¶ 109) and total payment obligation (Compl. ¶ 110). As fully set out in Point II above, the Membership Agreement conspicuously apprises the member of his or her total payment obligation and total sale price by specifically itemizing on the first page of the Membership Agreement the member's total payment obligation in a fully transparent manner.

Plaintiffs further contend that the Membership Agreement fails to comply with Regulation Z's requirements under 12 C.F.R. § 1026.23(b)(1) and § (b)(1)(v) by not providing members with two copies of the notice of the "right to rescind"

that states the date the rescission date period expires. (Compl. ¶¶ 111-118). Plaintiffs conveniently fail to clarify that the right of rescission under §1026.23(b) only applies to closed-end credit transactions "in which a security interest is or will be retained or acquired in a ***consumer's principal dwelling.***" 12 C.F.R. § 1026.23(a)(1) (emphasis added).  Moreover, the right of rescission "...applies only to the addition of the security interest and not the existing obligation." Id.   The Membership Agreement does not involve any security interest at all, let alone one being retained/acquired in a consumer's principal dwelling.  In sum, the Plaintiffs state no facts that could constitute a basis for claims under TILA and Regulation Z.

## V.   PLAINTIFFS' CLAIMS UNDER THE TCCWNA MUST FAIL AS A MATTER OF LAW

Under the TCCWNA, "no consumer contract...shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey".  N.J. STAT. ANN. § 56:12-16 (2014).  Furthermore, the TCCWNA states: "no seller...shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract...which includes any provision that violates any clearly established legal right of a consumer".  Id. at § 56:12-15.

Plaintiffs frivolously allege that the Membership Agreement contains language stating that its "provisions are and/or may be void, unenforceable or

inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey." (Compl. ¶ 126). Such language, however, simply does <u>not</u> exist in the Membership Agreement and appears to be a "relic" or a "cut and paste" job from one of Plaintiffs' counsel's other class action lawsuits unrelated to this one. (Compl. Exh. A). In any event, Plaintiffs have failed to allege a direct violation of the TCCWNA under § 56:12-16.

Thus, the sole remaining analysis is whether Plaintiffs have sufficiently alleged that the Membership Agreement "violates any clearly established legal right" of the member. *See*, <u>Barows v. Chase Manhattan Mortg. Corp.,</u> 465 F. Supp. 2d 347, 362 (Dist. N.J. 2006). Plaintiffs conclusorily advance in this regard that Equinox uses a Membership Agreement that includes language that violates the HCSA, the CFA, TILA and/or RISA." (Compl. ¶ 127). However, for all of the reasons stated in Points II-IV above, the Membership Agreement fully complies with all provisions of the HCSA (the only applicable statute in this context) and does not in any way violate the rights of the members. Because Plaintiffs have thus likewise failed to adequately allege a derivative violation of the TCCWNA under § 56:12-15, Plaintiffs' claims under the TCCWNA must be dismissed too. *See,* <u>Sauro v. L.A. Fitness International, LLC</u>, 2013 WL 978807 at *10 (dismissing claim under TCCWNA where Plaintiff failed to plead any clearly established law

that the membership agreement violates); *See also,* Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d at 362 (plaintiff failed to state a claim under TCCWNA as plaintiff has not alleged that any contract or notice sent to her contained any provision which violated any of her clearly established legal rights).

## RULE 12(b)(6) MOTION TO DISMISS STANDARD

FRCP 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the grounds of [his or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements…" Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Bald assertions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations are insufficient as a matter of law. McCalley v. Samsung Electronics America, Inc., 2008 WL 878402 at *3.

Instead, for a complaint "[t]o survive a motion to dismiss, [the pleading] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Riley v. Potter, 2010 WL

38

125841, *3 (Dist. N.J. Jan. 7, 2010).   Determining the plausibility of any given claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint should be dismissed…" <u>Riley v. Potter</u>, 2010 WL 125841 at *3.

## CONCLUSION

Because the instant lawsuit presents no actual case or controversy, and because the Plaintiffs have not been damaged or aggrieved in any way, Plaintiffs' claims under Counts I and IV should be dismissed for lack of standing.  In any event, a review of the Equinox Membership Agreement reveals that it is in full compliance with each and every provision of the HCSA.

Looking outside the HCSA adds nothing to Plaintiffs' case, moreover, because Equinox's Membership Agreement is not a "retail installment contract" and thus not subject to the requirements of the RISA statute.  Nor does Equinox extend "credit" in its Membership Agreement and thus it did not enter into a consumer credit transaction with the Plaintiffs.  TILA, therefore, is inapplicable too.  Thus, Counts II and III should be dismissed outright by this Court.

Finally, Plaintiffs have failed to adequately plead a direct or derivative violation of the TCCWNA.

As Plaintiffs' claims in the instant Complaint amount to nothing more than bald assertions, unsupported legal conclusions, and unwarranted inferences in the form of factual allegations, the instant 12(b)(6) motion should be granted and Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  Freehold, New Jersey
         March 14, 2014

                                    **LaROCCA HORNIK ROSEN**
                                    **GREENBERG & BLAHA LLP**

                            By: _____
                                    Lawrence S. Rosen
                                    83 South Street, 3rd Floor
                                    Freehold, NJ 07728
                                    T: (732) 409-1144
                                    E: LROSEN@LHRGB.COM
                                    *Attorneys for Defendant*
                                    *Equinox Holdings, Inc.*