UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLEY MCCARTHY and KIM KENNEDY on behalf of themselves and all others similarly situated, <br><br> Plaintiff(s), <br><br> -against- <br><br> EQUINOX HOLDINGS, INC., and JOHN DOES 1-25, <br><br> Defendant(s). | Civil Case No.: <br> 2:14-cv-00037(FSH)(JBC) <br><br> CIVIL ACTION <br><br> **ELECTRONICALLY FILED** |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF
THE FEDERAL RULES OF CIVIL PROCEDURE

Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 Telephone
(973) 244-0019 Facsimile

*Attorneys for Plaintiff*

On the Memorandum:

Joseph K. Jones, Esq. (JJ-5509)
Benjamin J. Wolf, Esq. (BW-3338)

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

Table of Authorities......................................................................................................ii, iii

PRELIMINARY STATEMENT AND STATEMENT OF FACTS............................................1

ARGUMENT.....................................................................................................................3

    I.    Legal Standard For A Motion To Dismiss Pursuant To Rule 12(B)(6) Of The
        Federal Rules Of Civil Procedure............................................................................3

    II.    Defendant's Contracts Are Retail Installment Contracts Pursuant to
        RISA, N.J.S.A. 17:16C-1, *et seq*.............................................................................4

    III.    Defendant's Contracts Violate Both the HCSA, N.J.S.A. 56:8-39 *et
        seq.*  and CFA, N.J.S.A. 56:8-1, *et seq*.................................................................9

        A.    Standing.........................................................................................9

        B.    Contracts Fail to State Total Payment Obligation pursuant to
            N.J.S.A. 56:8-39, *et seq*..............................................................12

        C.    Plaintiff Kennedy's New York Contract Fails to State the
            Existence of a Bond......................................................................16

        D.    Defendant's Contracts Require 13 1/2 Months of Payments for
            a 12 Month Contract....................................................................18

    IV.    Defendant's Violated TILA, 15 U.S.C. 1601 *et seq.* and Regulation Z................18

    V.    Defendant's violations of the HCSA, CFA, RISA and TILA Result in
        Violations of TCCWNA,  N.J.S.A. 56:12-14, *et seq*............................................20

CONCLUSION.................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

PAGE

### <u>Cases</u>

<u>Acevedo v Bally Total Fitness Corporation</u>, 1999 WL 1045035 (N.D. Illinois, 1999)...............2

<u>Allen v Holiday Universal</u>,  249 F.R.D. 166 (E.D. Pennsylvania. 2008)....................................2

<u>Barratt v. Cushman & Wakefield</u>, 144 N.J. 120 (1996)............................................................5

<u>Bosland v Warnock Dodge, Inc.</u>, 197 N.J. 543 (2009)..........................................................10-11

<u>Chulsky v Hudson Law Offices, P.C.</u>, 2011 U.S. Dist. LEXIS 13476 (D.N.J. 2011).................3-4

<u>Cox v Sears Roebuck Co.</u>, 138 N.J. 2 (1994)..........................................................................10

<u>Fenwick v Kay A. Jeep</u>, 72 N.J. 372 (1977)...........................................................................10

<u>Garza v Chicago Health Clubs</u>, 329 F. Supp 936 (N.D. Illinois 1971).......................................2

<u>Ki Ron Ko v Bally Total Fitness Corporation</u>, 2003 WL 22466193 (D. Kansas 2003)..............3

<u>Kriger v European Health Spa, Inc. et al</u>, 56 F.R.D. 104 (E.D. Wisconsin 1972)......................3

<u>Leon v Family Fitness Center (No 107)</u>, 61 Cal App. 4th 1227
      (Court of Appeal, Fourth District, Division 1, California 1998)....................................2

<u>McNair Snyapse Group Inc.</u>,  672 F.3d 213 (3rd Cir. 2012).......................................................9

<u>New Capitol Bar & Grill Corp v Div. of Emp. Sec.</u>, 25 N.J. 155 (1957)....................................9

<u>Phillips v County of Allegheny</u>, 515 F.3d 224, 233 (3rd Cir. 2008)..............................................4

<u>Perez v. Rent-A-Center</u>, 186 N.J. 209 (2006).......................................................................5,8-9

<u>Pope v Craftsman Builder Inc</u>, 2013 WL 105283  (App. Div. N.J. 2013)....................................10

<u>Rivers v Credit Suisse Boston Financial Corp.</u>, 2007 U.S. Dist. LEXIS 23621 (D.N.J. 2007)....3

<u>Sauro v LA Fitness International, LLC</u>, 2013 WL 978807 (D. N.J. 2013)...................................9

<u>Skinder-Strauss Associates v Schein Media</u>, 640 F.3d 72 (3rd Cir. 2011)...................................10

<u>Smith v Paramount Recovery Systems</u>, 2008 U.S. Dist. LEXIS 93690 (D.N.J. 2008)..................3

United Consumer Financial Services v. Carbo, 410 N.J. Super. 280 (2011)................................20

Van Vels v Premier Athletic Center of Plainfield, 182 F.R.D. 500 (W.D. Michigan 1998).......3

Weiss v Regal Collections, 385 F.3d 337 (3rd Cir. 2004)............................................................10

**Statutes**

California Civil Code Section 1803.1.........................................................................................2

Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA").............................................1,9-13,20-22

Embalmers and Funeral Directors Act, N.J. STAT. ANN §45:7-82 (2014)................................9

Fair Debt Collection Practices ACT (FDCPA), 15 U.S.C. § 1692 *et. seq*...................................9

Health Club Services Act, N.J.S.A. 56:8-39 *et seq.* ("HCSA").....................1,6,9-15,17-18,20-22

Illinois Retail Installment Sales Act...........................................................................................2

L. Civ. R. 7.2(b)..........................................................................................................................1

Michigan Retail Installment Sales Act [MRISA].......................................................................3

Regulation Z, 12 C.F.R. 1026.18 *et seq*........................................................................1,18,20-21

Retail  Installment Sales Act, N.J.S.A. 17:16C-1, *et seq.* ("RISA")........................1,4-9,20-22

Rule 12(b)(6).................................................................................................................................3

Telephone Consumer Protection Act (TCPA), 47 U.S.C. 227.....................................................10

Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A.,
    56:12-14, *et seq.* ("TCCWNA")..............................................................................1,9,20-22

Truth in Lending Act (TILA), 16 U.S.C. 1601 *et seq*.......................................................1,18-22

**Other**

Black's Law Dictionary...........................................................................................................6,15

GROUNDS FOR AN EVICTION BULLETIN (February 2008), New Jersey
    Department of Community Affairs, Division of Codes and Standards,
    Landlord-Tenant Information Services *located at*
    http://www.state.nj.us/dca/divisions/codes/publications/pdf_lti/grnds_for_evicti_bulltin.p df.......7

The Law Dictionary..................................................................................................................6

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Plaintiffs brought this action as a class action, on behalf of themselves and all other New Jersey consumers similarly situated, relating to EQUINOX HOLDINGS, INC. ("Equinox") and JOHN DOES 1-25 (collectively "Defendants") violations of the Health Club Services Act, N.J.S.A. 56:8-39 *et seq.* ("HCSA"), the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA"); the Retail  Installment Sales Act, N.J.S.A. 17:16C-1, *et seq.* ("RISA"), the Truth in Lending Act (TILA), 16 U.S.C. 1601 *et seq.* and Regulation Z, and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, *et seq.* ("TCCWNA"). *See* **Exhibit A** annexed to the Certification of Lawrence S. Rosen ("Rosen Cert.").

It is respectfully submitted that Defendant's motion to dismiss is 40 pages[1] full of inapplicable examples and hypotheticals lacking support in both statute and case-law coupled with opinion that is more fitting for a legislative hearing than a judicial one. In addition, what Defendant clearly lacks in precedent or statutory interpretation, it seeks to gain by numerous and varying *ad-hominem* attacks on Plaintiffs' case and their counsel[2]. *See* Defendant's Memorandum of Law ("Defendant's MOL").

In further support of its motion to dismiss, Defendant even goes so far as to invent new legal phrases such as "traditional retail installment contract" and "actual retail installment contract." *See* Defendant's MOL, pp. 24-25, 27. Apparently, Defendant's strategy is to repeat these new terms ad-nauseum with the hope of convincing the Court that they are actual legal

---

[1] Pursuant to L. Civ. R. 7.2(b), Defendant uses the statutory maximum number of pages for a Brief.

[2] Defendant feels it necessary to somehow boost their argument by filling their papers with a wide-array of patronizing words and phrases including, but not limited to:  "attorney-driven", "tester Plaintiffs",  "...but for reasons only known to him...", "frivolous",  "...lack of due diligence...", "gratuitously", "...haste and perhaps confusion..."; "confusingly";  and, "frivolously". *See* Defendant's MOL, pp. 1, 10, 14-15, 29, 34, 36 and,  FN 6.

terminology or even germane to the facts here. Notably, Defendant is unable to find support in case-law or statute regarding these new legal terms.

Defendant also surmises that its own inability to find case-law supporting Plaintiffs' claims warrants the Court dismissing the Amended Complaint. *See* Defendant's MOL, p. 27. Plaintiffs submit that not only does New Jersey statute and case-law support Plaintiffs' claims but numerous other States and health club companies view many of Plaintiffs' claims the exact same way. *Infra* **Section II**. For example, Defendant argues that the words "retail installment contract" do not apply to health club contracts in New Jersey despite the undisputed fact that they do in numerous other States and by other health club companies. *Infra*, Fns 3-8; **Section II**.

As will be further shown, Defendant is simply unable to dispute the following about its contracts:

1)   Defendant's Membership Agreement (hereinafter the "contract") is not month-to-month. The contract is at a minimum, a ***12 month contract***, and Plaintiffs submit, 13 1/2 months (*infra* **Section II**)*,* paid in monthly installments;

2)   Defendant's contracts do not state the Plaintiffs' total payment obligation and require the Plaintiffs to perform the necessary calculus to determine the total of the 12 monthly payment obligation being undertaken;

3)   Numerous States and other health club companies have classified health club contracts, like Defendant's, as Retail Installment Contracts, including, but not limited to: California[3]; Illinois[4]; Pennsylvania[5] (within the Third Circuit); Kansas[6]; Wisconsin[7]; and ; Michigan[8];

---

[3] Leon v Family Fitness Center (No 107), 61 Cal App. 4th 1227, 1230 (Court of Appeal, Fourth District, Division 1, California 1998) ("Carlos Leon signed a Club Membership Agreement (***Retail Installment Contract***) on June 1993 and thereafter became a member of Family Fitness." In Leon, the Court specifically cited to California Civil Code Section 1803.1 regarding what is required of a retail installment contract, which in the Leon case involved a health club. Id. at p. 1232.

[4] Acevedo v Bally Total Fitness Corporation, 1999 WL 1045035 (N.D. Illinois, 1999) ("Plaintiff executed a ***retail installment contract*** with Bally for the purchase of a "Premier Plus" membership plan"); Garza v Chicago Health Clubs, 329 F. Supp 936, 959 (N.D. Illinois 1971)(this case specifically involves the "Illinois Retail Installment Sales Act" in regards to Defendant, health club.

[5] Allen v Holiday Universal, 249 F.R.D. 166,169 (E.D. Pennsylvania. 2008) (Ms. Robinson visited the Bally Total Fitness Club located at 3400 Aramingo Avenue, Philadelphia, Pennsylvania, and entered into a ***Retail Installment Contract*** prepared by the Health Clubs....")

4)      Despite Defendant's heavy reliance on this analogy, a health club contract is radically different from a residential lease. For example, non-payment of a health club contract results in non-admission to the health club. Contrarily, landlords are not able to use self-help based on non-payment of rent such as locking a resident out of their apartment but must, instead, begin court eviction proceedings. *See* FN 11.

5)      Plaintiff, Kim Kennedy ("Kennedy") was required to sign both a New York **and** New Jersey contract on the **same day**. *See* **Section III(C)**. The New York contract does not contain the necessary bond required mandated by the HCSA.

## ARGUMENT

I.      <u>Legal Standard For A Motion To Dismiss Pursuant To Rule 12(b)(6) Of The Federal Rules Of Civil Procedure</u>

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but rather tests the legal sufficiency of the complaint. *See* <u>Rivers v Credit Suisse Boston Financial Corp.</u>, 2007 U.S. Dist. LEXIS 23621 (D.N.J. 2007). The question is not whether plaintiff will prevail at trial, but whether she should be given an opportunity to offer evidence in support of her claims. *See* <u>Smith v Paramount Recovery Systems</u>, 2008 U.S. Dist. LEXIS 93690 (D.N.J. 2008). "In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff, 'and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" <u>Chulsky v Hudson Law Offices, P.C.</u>, 2011

---

[6] <u>Ki Ron Ko v Bally Total Fitness Corporation</u>, 2003 WL 22466193, *1 (D. Kansas 2003) ("Christian Hansen signed a ***retail installment contract*** to become a patron of Defendant Bally Total Fitness....")

[7] <u>Kriger v European Health Spa, Inc. et al</u>, 56 F.R.D. 104 (E.D. Wisconsin 1972) (The violations are claimed to have occurred as a result of an agreement between the defendants whereby the defendant bank purchased promissory notes or ***retail installment contracts*** from the defendant spa..."

[8] <u>Van Vels v Premier Athletic Center of Plainfield</u>, 182 F.R.D. 500, 504 (W.D. Michigan 1998) (case brought against fitness centers under Michigan's Retail Installment Sales Act [MRISA])

U.S. Dist. LEXIS 13476 (D.N.J. 2011), *quoting* <u>Phillips v County of Allegheny</u>, 515 F.3d 224, 233 (3rd Cir. 2008).

<p style="text-align:center"><b>II. <u>Defendant's Contracts Are Retail Installment Contracts Pursuant to RISA, N.J.S.A. 17:16C-1, <i>et seq.</i></u></b></p>

Defendant spends close to 6 full pages in its Brief (without citing one case) imploring the Court that its contracts are not retail installment contracts; and thus, not covered under RISA. *See* Defendant's MOL, pp. 22-28.  The problem for Defendant is that a clear reading of the statute, case-law and numerous other health club contracts is proof positive that its contracts are, in fact, retail installment contracts. *See* FN 3-8. Notably, Defendant does not dispute that it is a "retail seller" under RISA, N.J.S.A 17:16C-1(c) but that its contract is not a "retail installment contract", N.J.S.A 17:16C-1(b) (i.e., Plaintiffs' monthly payments are not installments)[9]. *See* Defendant's MOL, pp. 22-28.

Pursuant to N.J.S.A 17:16C-1(b) a Retail Installment Contract is defined as:

> "Retail installment contract" means any contract, other than a retail charge account or an instrument reflecting a sale pursuant thereto, entered into in this State between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or ***services***, which are primarily for ***personal***, family or household purposes, or any part thereof***, in two or more installments over a period of time.*** This term includes a security agreement, chattel mortgage, conditional sales contract, or other ***similar instrumen***t and any contract for the bailment or leasing of goods by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to or in excess of the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract." [emphasis added].

4

The Supreme Court of New Jersey reasoned in <u>Perez v. Rent-A-Center</u>, 186 N.J. 209 (2006)

> By including conditional sales, chattel mortgages, security interests, leases, and similar instruments within RISA's protective ambit, the Legislature signaled that it intended to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category. That broad mandate, along with the well-established notion that remedial statues like RISA should be liberally construed to achive their salutary aims, *Barratt v. Cushman & Wakefield*, 144 N.J. 120, 127 675 A.2d 1094 (1996), require questions regarding the applicability of the staute to be resolved in favor of consumers for whose protection RISA was enacted.

In the case *sub judice,* each Plainitiff purchased a one-year membership for personal use and agreed to pay the purchase price in more than two installments. Plaintiff could have chosen to pay for the entire contract price at the time the contract was signed. However, Plaintiff chose to pay the purchase price in 12 monthly installments. *See*, **Exhibit A** and **Exhibit B** annexed to the Amended Complaint.

Defendant is simply wrong about the nature of its own contracts. Defendant first claims that "The health club membership is **<u>not an annual membership</u>**" and the membership is on a month-to-month basis." However, Defendant cannot point to anywhere in either of Plaintiffs' contracts that states that membership is on a month-to-month basis. In addition, Defendant is unable to reconcile the undisputed facts that Plaintiffs are contractually obligated to make monthly payments for a period of **<u>12 months</u>**. In fact, both of the contracts annexed to the Complaint as **Exhibit A** and **Exhibit B**, state on the front page, "I understand this Agreement is for a minimum of twelve (12) months..." and on the back page "If you freeze you membership during the first 12 months of your membership, you will be charged regular monthly dues until you *meet the one year obligation...* " [Emphasis added]. There is no doubt that the Plaintiffs'

financial obligation to Defendant is for a period of 12 months. Furthermore, given that the contract requires 45 days notice in order to cancel, which can only be exercised after the end of the 12 month agreement, Defendant's contract is actually for a minimum of 13 1/2 months. Although the purchase price of the one-year membership is paid in monthly installments, no Plaintiff, barring exceptions not relevant here,[10] is permitted to terminate of the contract prior to paying all 12 monthly installments.  Thus, Defendant's citations to the word "installment" and "debt" from the Black's Law Dictionary and The Law Dictionary on this issue are correct but its analysis is wrong. *See* Defendant's MOL, p. 25.

In each contract, Plaintiff is obligated for 12 monthly payments; therefore, each monthly payment is an "installment" up and until the 12th monthly payment. To the extent that Plaintiff may extend their contract **beyond** 12 months, their monthly payments may no longer be installments because they are no longer obligated for a fixed period of time. Defendant also states, without any support, that its agreements can never be considered an "installment" under RISA because the "'retail purchase price' is the amount for **that month only** (not the yearly sum)." *See* Defendant's MOL, p. 24. Defendant is again just plain wrong on this issue.  As much as Defendant would like this Court to believe that its contracts are for one month at a time, it is just not true.  Each and every contract states, "I understand this Agreement is for a minimum of twelve (12) months..."   Furthermore, pursuant to N.J.S.A. 56:8-42(e); a Health Club must provide a written contract containing a NOTICE OF CANCELLATION, "A contract for new or increased health club services may be cancelled by the buyer for any reason before midnight of the third operating day... " Therefore, if Plaintiffs were only paying the retail price for a single month, Defendant would be required to provide a new written contract and separate NOTICE OF

---

[10] *See* Defendant's MOL, FN 15.

CANCELLATION for each month.  As previously stated, Plaintiff submits that the contract is actually for the purchase of a one-year membership ,payable in 12 monthly installments.

Instead of providing the Court with any relevant case-law or statutory authority for the premise that its contract is not a "retail installment contract", Defendant attempts to equate the membership agreements to a "residential lease". *See* Defendant's MOL, p. 23.  It is respectfully submitted that this analogy is also wrong. Without delving too much into the irrelevant legal topic of landlord/tenant law that Defendant has introduced, there are many differences between a retail installment contact and a residential lease.  For example, if a Plaintiff stopped paying then Defendant would simply prohibit them from utilizing the health club. This type of self-help is simply not permitted in a residential lease in the State of New Jersey.[11]  If a tenant stopped paying rent for one month, the landlord could not lock them out of their home. Instead, the landlord would be required to provide them notice, and then begin a Court eviction proceeding.

Defendant's next strategy is to invent several new legal terms such as "traditional retail installment contracts" and "actual retail installment contract" also without support by statute, case-law or any type of dictionary, legal or otherwise. *See* Defendant's MOL, pp. 24-25,27. Not surprisingly, a health club membership agreement does not fall squarely into Defendant's new terminology but the purchase of furniture and appliances do. This type of opinion by Defendant is more appropriate for a legislative hearing than a judicial one, where Defendant can lobby the New Jersey legislature to amend RISA to include the terms: "traditional retail installment contracts" and "actual retail installment contract". *See* Defendant's MOL, pp. 24-25,27.

---

[11]  *See* New Jersey Department of Community Affairs, Division of Codes and Standards, Landlord-Tenant Information Services, GROUNDS FOR AN EVICTION BULLETIN (February 2008), http://www.state.nj.us/dca/divisions/codes/publications/pdf_lti/grnds_for_evicti_bulltin.pdf.

Moreover, even though Defendant alleges that its own legal research fails to show its contract is a retail installment contract (Defendant's MOL, p. 27), it fails to point to a single case anywhere in which any court held that a 12 month health club contract, was not a retail installment contract. Furthermore, numerous other States and health club companies clearly include health club contracts within the purview of a retail installment contract. *Supra*, FN 3-8.

Although not directly addressing the issue of health club contracts, the Supreme Court of New Jersey has extensively interpreted the types of contracts included within RISA as well as the Court's reasoning that RISA should be viewed broadly. *See* <u>Perez v Rent A Center, Inc</u>., 186 N.J. 188. Plaintiff submits that the <u>Perez</u> decision provides guidance to the Court that health club contracts should be considered retail installment contracts. At the very least, under <u>Perez,</u> retail installment contracts under RISA are not confined to the narrow definitions created by Defendant through the invented "traditional retail installment contracts" or "actual retail installment contract".

In <u>Perez</u>, the Court was specifically addressing whether a rent-to-own contract is subject to RISA. Similar to Defendant's argument here as to RISA, the issue in <u>Perez</u> focused on the meaning of "retail installment contract". *See* <u>Perez</u>, 186 N.J. at p. 207.  The New Jersey Supreme Court ultimately ruled that RISA is not subject to the narrow interpretation of a retail installment contract argued by Defendant here,  but is actually a much broader statute. <u>Id</u>. For example the New Jersey Supreme Court wrote: "The second sentence of the Act is a catch-all by which the Legislature declared that instruments analogous but not identical to pure retail installment sales would also fall within the Act." <u>Id</u>. pp. 205-206  as well as  "By including conditional sales, chattel mortgages, security interests, leases, and *similar instruments* within RISA's protective ambit, the Legislature signaled that it intended to sweep into the Act as many cognate

agreements as possible, ***even those that did not strictly fall within a denominated category***"[12].
Id at p. 211. That broad mandate, along with the well-established notion that remedial statutes like RISA should be liberally construed to achieve their salutary aims, require questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted. Id. at p. 211.

> ### III.   Defendant's Contracts Violate Both the HCSA, N.J.S.A. 56:8-39 *et seq.* and CFA, N.J.S.A. 56:8-1, *et seq.*
>
> #### A.   Standing

Defendant initially makes the argument that Plaintiffs lack standing regarding their HCSA/CFA (Count I) and TCCWNA (Count IV)[13] claims primarily because Plaintiffs have failed to allege an "injury-in-fact" or "ascertainable loss" as required by the CFA. *See* Defendant's MOL, pp. 7-9, 17, 20-22. Similar to other parts of its Brief, Defendant makes arguments without any support[14] in case-law or statute but simply because Defendant "says so".

Defendant's analysis here is further incorrect in many respects. For example, Defendant initially states that "In the ***class action*** context that requirement (to show an injury-in-fact) must be satisfied by at least one named Plaintiff. *See* McNair Snyapse Group Inc., 672 F.3d 213, 223 (3rd Cir. 2012)." *See* Defendant's MOL, p. 6. This is just plain wrong. For example, many cases brought under the Fair Debt Collection Practices ACT (FDCPA), 15 U.S.C. § 1692 et. seq., are

---

[12] Defendant's reliance on N.J. STAT. ANN §45:7-82 (2014), the New Jersey Embalmers and Funeral Directors Act is simply not convincing as Perez exemplifies that RISA is not a closed universe based on statutes that have an "explicit reference to a retail installment contract ". *See* Defendant's MOL, FN 19; *See also* New Capitol Bar & Grill Corp v Div. of Emp. Sec., 25 N.J. 155,160 (1957) *cited by* Perez, at p. 208.

[13] *Infra* **Section V**.

[14] Defendant's primary reliance on a news article and press release is telling about the strength of its argument. *See* Defendant's MOL, pp. 16-17. Moreover its citation to Sauro v LA Fitness International, LLC, 2013 WL 978807, *4 (D. N.J. 2013) is unpersuasive. In Sauro, the primary issue was alleged misrepresentation of a hold harmless or indemnification agreement in that health club's contract. That is clearly distinguishable from Defendant's failure here to state Plaintiffs' total payment obligation and, for Plaintiff Kennedy, the bond requirement in the New York contract provided to her. *Supra* **Section III (B); Section III(C)**.

brought as class actions and do not require showing an injury in-fact but can merely show statutory damages[15]. Similarly, claims brought under the Telephone Consumer Protection Act (TCPA) are also usually brought as class action cases and do not require showing an injury in-fact but one can merely show statutory damages[16].

The New Jersey Supreme Court in <u>Cox v Sears Roebuck Co.</u>, 138 N.J. 2, 22 (1994) ruled that an ascertainable loss is defined as one that is quantifiable or measurable ***and does not have to be immediate or one that even results in out-of-pocket expenses***. *See also* <u>Bosland v Warnock Dodge, Inc.</u>, 197 N.J. 543, 558-559 (2009); <u>Pope v Craftsman Builder Inc</u>, 2013 WL 105283, *10 (App. Div. N.J. 2013). The CFA does not even demand that Plaintiffs necessarily point to an actually suffered loss or to an incurred loss, but only to one that is "ascertainable." *See* <u>Bosland</u>, 197 N.J. at p. 559. In fact, requiring a consumer, like Plaintiffs, to actually make the expenditures (as argued by Defendants here, *see* Defendant's MOL, pp. 7-9, 17, 20-220) would be contrary to the remedial purposes of the CFS. *See* <u>Bosland</u>, 197 N.J. at 559; <u>Cox</u>, 138 N.J. at 22.

Certain sections of the CFA create *per se* violations, making merchants *strictly liable* for noncompliance. <u>Fenwick v Kay A. Jeep</u>, 72 N.J. 372, 378 (1977). N.J.S.A 56:8-46 expressly provides that any violation of the HCSA is a *per se* violation of the CFA.

Pursuant to N.J.S.A. 56:8-42(b): "A health club services contract shall specifically set forth in a conspicuous manner on the first page of the contract the buyer's ***total payment obligation*** for health club services to be received pursuant to the contract." (emphasis added); *infra* **Section III(B)**.

---

[15] For example, and there are numerous within the Third Circuit,  *see* <u>Weiss v Regal Collections</u>, 385 F.3d 337 (3rd Cir. 2004);

[16] For example, *see* <u>Skinder-Strauss Associates v Schein Media</u>, 640 F.3d 72,74 (3rd Cir. 2011).

In addition, pursuant to HCSA, N.J.S.A. 56:8-42(c) states: "A health club services contract of a health club facility which maintains a bond, irrevocable letter of credit or securities, moneys or other security pursuant to subsection a. of section 3 of this act shall set forth that a **bond**, irrevocable letter of credit or securities, moneys or other security is filed or deposited with the Director of the Division of Consumer Affairs to protect buyers of these contracts who are damaged or suffer any loss by reason of breach of contract or bankruptcy by the seller." (emphasis added).

Accordingly, as will be further shown, each of the contracts annexed to the First Amended Complaint contain a *per se* violation as they fail to state the Plaintiffs' total payment obligation (*infra* **Section III[B]**). Furthermore, Plaintiff Kim Kennedy's New York contract contains a *per se* violation as it fails to comport with the HCSA's bond requirement. *Infra* **Section III (C)**.

Because N.J.S.A 56:8-68 provides that any violation of the HCSA is a *per se* violation of the CFA, by definition, Plaintiffs are not required to prove any loss, which otherwise would be a necessary element in a CFA claim. Even in the event the Plaintiffs were required to prove a loss, the CFA does not require a claimant to prove a loss, but rather one that is merely capable of being ascertained. *See* <u>Bosland</u>, 197 N.J. at p. 543, 558. To that end, Plaintiffs have also alleged an ascertainable loss in the form of all monthly installment payments collected by Defendant subsequent to Defendant receiving a cancellation notice from Plaintiffs. This is because Defendant potentially requires 13 1/2 months worth of payments even though it is a 12 month contract (*infra* **Section IV[D]**). On this point Defendant provides no support, via case-law or statute, for the premise that Plaintiffs are required to first cancel their membership in order to

allege an ascertainable loss. *See* Defendant's MOL, pp. 8, 21. Indeed, the CFA does not require such action.

**B.      Contracts Fail to State Total Payment Obligation pursuant to N.J.S.A. 56:8-39, *et seq*.**

As stated by Defendant in its motion papers, the HCSA requires Defendant to state the "total payment obligation"[17] in its contract. *See* Defendant's MOL, p. 11. Defendant, again, writes almost 5 full pages without a single case supporting its argument. Instead, Defendant relies almost exclusively on a 1987 press release from the then Governor of New Jersey and a 1987 newspaper article *See* Defendant's MOL, FNs 11-12.

Interestingly, Defendant refers in Footnote 9 of its MOL, to the website of the New Jersey Office of the Attorney General in an attempt to support its argument that its contract contains all of required disclosures as to Plaintiffs' total payment obligation.  However, what Defendant fails to inform this Court is that the New Jersey Office of the Attorney General on the same website supplies a Sample Membership Agreement For Health Clubs That Maintain a Bond.  The Sample Contract provides the following disclosures: (*See* Certification of Joseph K. Jones, Esq.)

**Membership Itemization**:

Your membership is for a period of _____ months beginning on:_____ and ending on:_____

Enrollment fees: $_____ Monthly fees: $_____ Total membership price $_____

Total paid today $_____ Balance due $_____

Your membership is:   _____ Renewable _____ Nonrenewable

**Payment Information**:

---

[17] Pursuant to HCSA, N.J.S.A. 56:8-42(b). *Supra.*

| Number of Payments | Amount of Payment | First Payment Due Date | When Payments are Due Each Month |
|---|---|---|---|
|  |  |  |  |

The Sample Contract provided by the New Jersey Office of the Attorney General specifically set forth in a conspicuous manner on the first page the buyer's total payment obligation for health club services to be received, in the section titled "Total membership price". The Sample Contract does not leave it up to the consumer to perform the necessary calculations to figure out what their total payment obligation is. Rather, it specifically states the total payment obligation of the buyer.  Had Defendant used the Sample Contract, it could have avoided many of the alleged violations. For some reason Defendant chose not to use the Sample Contract and elected to skip or leave out what may be considered the most important information.

Defendant is unable to overcome that its contracts fail to state the total payment obligation required by the HCSA and that its contracts include several other violations. The 1987 press release and newspaper article do little, if anything, to dispute the text of the HCSA on the "total payment obligation" issue. Plaintiffs must also address the relevant portion of Defendant's well-designed, yet inaccurate, chart[18] regarding Plaintiff's allegations pursuant to the HCSA and CFA. *See* Defendant's MOL, p. 10.

| **Plaintiff's Allegations** | **Relevant Section of Statute** | **Provisions from the Membership Agreement** | **Defendant's MOL Inaccuracy** |
|---|---|---|---|
| -Members  "total payment obligation" not set forth in Membership Agreement (Compl. ¶ 86.) | -Membership Agreement must set forth member's total payment obligation. **N.J. STAT. ANN. § 56:8-42(b)** | -Membership Agreement sets forth member's total payment obligation. (Compl. Ex. A., Pg. 1) | -Defendant's contract requires Plaintiffs to do the necessary calculus in order to determine the total payment obligation**.** For example, Plaintiff |

---

[18] Plaintiffs have copied the relevant portion of the chart from Defendant's MOL and added a fourth column. *See also infra.*

| | | | McCarthy's total payment obligation in Defendant's contract should have been stated as: Fees + monthly payments + tax = ($0.00 + $92.90 +($144.00 x 12) + ($10.08 x 11) = $16.58) = $1,958.44 |
|---|---|---|---|

Defendant mistakenly frames Plaintiffs' argument as to the required "total payment obligation" as one where Plaintiffs alleged "hidden fees", "hidden costs" or that Defendant is required "...to do the math and add up the sum total..." in the contract. *See* Defendant's MOL, pp. 11-12. In fact, Defendant is unable to overcome the obvious fact that nowhere in Plaintiffs' contracts is the "total" amount stated. Although Defendant wants Plaintiffs to engage in the necessary calculus to determine the "total payment obligation", this is not what is required by the statute or by a simple definition of the terms.

Defendant even goes so far as to reference a January 14, 2013 press release from the New Jersey Attorney General that states Plaintiffs' allegations perfectly. See Defendant's MOL, FN 9. This press release states in relevant part: "Consumers are entitled to a written contract that lists the consumer's ***total payment obligation (fees + monthly payments + tax) on the first page of the contract.*** " (emphasis added). The formula states "monthly payments" as a plural not singular. Clearly, from Defendant's own citation, the New Jersey Attorney General reiterates what is in the HCSA (and alleged by Plaintiffs) that Defendant is required to state the total for all of the "payments" in the contract, not just the amount of one single payment. Here, that would have required stating the total for Plaintiffs' full 12 month obligation. Id.

14

"Total" is defined by <u>Blacks Law Dictionary</u> (1999) as "**1.** Whole; ***not divided***; full; complete" (emphasis added). "Payment" is defined as "**1.** Performance of an obligation, usu. by the delivery of money." <u>Id</u>. "Obligation" is defined as "**2.** A formal , binding agreement...of a liability to pay a certain amount...". <u>Id</u>. Accordingly, any opinion by Defendant that the amount due on the contract should be anything other than the total, "whole" or "not divided"  amount for 12 months is wrong based on the simple definitions of these terms. *See* Defendant's MOL, p. 12*; supra*.

For example, Plaintiff McCarthy's total payment obligation in Defendant's contract should have been stated as: $0.00 (Fees).+ $92.90 + (12 x $144.00 [monthly payments]) + (12 x $10.08 (tax) + $16.58) = $1,958.44. A review of McCarthy's contract annexed to the Affidavit of Kevin S. Morris ("Morris Aff.") as **Exhibit B** reveals that that it fails to show the "total payment obligation" of $1,958.44, for McCarthy. It only states the amount of one single monthly installment payment, when in fact the contract obligates her for 12 monthly installment payments. The "total payment obligation" amount (i.e. "***not divided***"[19] into months as suggested by Defendant) is what Plaintiff is obligated to pay for the purchase of the one-year membership. .

Defendant further mixes up the HCSA requirements for Plaintiffs' 12 monthly payment obligation with Plaintiffs' option to be a month to month member ***after*** payment in full of the 12 month contract.  *See* Defendant's MOL, pp. 12-13.  As previously stated, Defendant's contract obligates Plaintiffs to the purchase price of a one year membership payable in 12 monthly installment payments. Once the 12 month obligation has been paid, Plaintiffs then, **and only then**, are allowed to exercise their option to become a "month to month" member. Defendant writes: "If Equinox were to actually add up and set out a 12 month total at the time the member

---

[19] *See* <u>Blacks Law Dictionary (1999)</u>, definition of "total". *supra*

15

joins the health club, then this aggregated amount would potentially be deceptive because Equinox would necessarily have to assume that each and every member would remain at the health club for precisely 12 months." *See* Defendant's MOL, p. 12.  However, Defendant fails to explain why disclosing to a buyer the total amount of money they are obligated to pay for the purchase of a one-year membership, if they elected to pay monthly rather than paying all at once, would be deceptive. When a prospective consumer purchases a one-year membership from Defendant, and decides to pay for it at one time rather than making monthly installment payments, the consumer is surely given the total price for the one-year membership. In this example, there is nothing deceptive, because without being given the total price, the consumer would not know much to pay.  Defendant fails to explain why it is different when a consumer elects to pay via monthly installments.  The argument that  Equinox would necessarily have to assume that each and every member would remain at the health club for precisely 12 months is completely incorrect because the buyer is only obligated for one year after.  Whether a member chooses to renew his membership and on what terms, are not part of the 12 month payment obligation.   Therefore, Defendant is required to disclose to each new consumer, the total payment obligation they are committing to when the agree to purchase a one-year membership.

<div align="center">

**C**.     **Plaintiff Kennedy's New York Contract Fails to State the Existence of a Bond**

</div>

Plaintiff again must address the relevant portion of Defendant's chart.[20] (*supra*). *See* Defendant's MOL, p. 10. It is also respectfully submitted that Defendant has completely misrepresented one of Plaintiffs' claims in the Amended Complaint on this issue and then have the chutzpah to refer to  Plaintiffs' allegations as "specious", a "lack of due diligence on part of the Plaintiffs"  and being done "frivolously". In addition Equinox states that "Plaintiffs

---

[20] Plaintiff has, again, copied the relevant portion of the chart from Defendant's MOL and added a fourth column.

erroneously attached as **Exhibit B** to the Complaint an inapplicable and incomplete Equinox

form New York membership agreement". *See* Defendants MOL, p. 6, 14, and FN5. *See* contract

of Plaintiff Kim Kennedy annexed to Amended Complaint as **Exhibit B** in Rosen Cert.  To be

perfectly clear with this Court, there was nothing erroneous about Plaintiffs' decision to attach

**Exhibit B** to the Complaint and any suggestion otherwise is pure gamesmanship by opposing

counsel. Perhaps Defendant can explain why Ms. Kennedy was given the New York membership

agreement, at a New Jersey club, and asked to sign it. The undisputed fact is that Ms. Kennedy

signed the contract attached to the Complaint as **Exhibit B.**

| **Plaintiff's Allegations** | **Relevant Section of Statute** | **Provisions from the Membership Agreement** | **Defendant's MOL Inaccuracy** |
|---|---|---|---|
| -No reference in Membership Agreement to bond being on file. (Compl. ¶ 86) | -Membership Agreement must state that there is a bond on file. **N.J. STAT. ANN § 56:8-42(c)** | -Membership Agreement states that there is a bond on file. (Compl. Exh. A, Pg. 4, ¶ 29) | Plaintiff Kennedy was required to sign both a New Jersey **and** New York contract.  The **New York contract** does **not** state there is a bond on file. This leads to the question of how many other members of the class received a New York contract  lacking the bond  requirement? *See* Compl. **Ex. B**. |

**Exhibit B** of Plaintiff's Amended Complaint is a contract signed by Plaintiff Kennedy

which clearly does not contain the bond[21] requirement pursuant to the HCSA. Defendant

characterizes this properly pled claim as "inapplicable" and "erroneously attached". *See*

Defendant's MOL, pp. 6, 14-15. Instead of providing this Court with any argument addressing

the fact that Plaintiff Kennedy apparently signed **not one, but two different contracts** on the

---

[21] Pursuant to HCSA, N.J.S.A. 56:8-42(c). *Supra*.

same day of June 10, 2013 and that the New York contract (**Exhibit B** of Plaintiff's Amended Complaint) does not contain the bond requirement under the HCSA, Defendant drops a mere footnote and continues its pattern of patronizing Plaintiffs' claims. *Supra* FN 2.

How many other members of the class were provided the same defective New York contract when they registered for Defendant's health club in New Jersey? Plaintiffs have correctly pled that one contract contained the bond requirement of the HCSA (**Exhibit B** to the Morris Affidavit[22]) and one did not (**Exhibit B** to Amended Complaint annexed to the Rosen Cert.). Defendant provides no argument to the contrary.

### D. Defendant's Contracts Require 13 1/2 Months of Payments for a 12 Month Contract

It is undisputed that Defendant's contract has a 45 day cancellation requirement. In addition, it is undisputed that Defendant's contract obligates Plaintiffs to make monthly payments for 12 months. Given the 45 day cancellation requirement, if a Plaintiff cancels on the last day of the 12th month, they are then required to pay for an extra 1 1/2 months.  Defendant's contract fails to disclose this requirement. Therefore, in terms of an "injury-in-fact" or "ascertainable loss" (supra **Section III[A]**) Plaintiffs have alleged such ascertainable loss as the amount collected by Defendant after it has received a cancellation notice by Plaintiff.

### IV. Defendant's Violated TILA, 15 U.S.C. 1601 *et seq.* and Regulation Z

For transactions within the scope of the Truth in Lending Act, information must be conveyed to the consumer in the form of written disclosures.  Regulation Z, at 12 C.F.R. 1026.18 *et seq.*[23], mandates that certain disclosures be provided to the consumer in closed-end credit

---

[22] Interestingly, the Morris Affidavit includes no copy of the contract signed by Plaintiff Kennedy annexed to the Amended Complaint as **Exhibit B**.

[23] Plaintiff concedes Defendant's argument as to Section 1026.23 **ONLY** but not as to Section 1026.18,

transactions. Those disclosures include a clear and conspicuous statements as to the total sale price and total payment obligation of the consumer.

Defendant, again, correctly cites the applicable law or definition but then applies the wrong analysis[24]. In some case, Defendant underlines certain parts for emphasis but neglects to underline other parts not in its favor. *See* Defendant's MOL, p. 32. Defendant correctly states that under 15 U.S.C. §1602(g) "'Creditor' is defined by the Act as 'a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, <u>consumer credit</u> *(sic)* which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtness or, if there is no such evidence of indebtness, by agreement. "

Here, Defendant, also again, fails to provide any case-law to support that it is not a "creditor". *See* Defendant's MOL, pp. 31-34. Based on the definition of "creditor" this case is clearly in connection with a "service" as it is for health club services. In addition, since Defendant's contract requires monthly installment payments for 12 months, it is payable in ..."more than four installments..." *see infra*, **Section II**. Defendant's issue is that it alleges that it does not extend consumer credit. However, for those consumer who does not pay in full for their purchase of a one-year membership, are obligated to make monthly installments for a 12 month period of time. Therefore, Defendant does extend credit since Plaintiff is on a monthly installment plan for 12 months.

---

[24] And also invents other new legal terms to bolster its argument including "typical consumer credit transaction" and "unconditional 'debt". *See* Defendant's MOL, pp 33-34.

As to Plaintiffs' allegation that Defendant's contract is a "closed-end credit"[25] plan under

TILA and Regulation Z, Defendant continues to fail to cite any case-law that it is not such a plan.

Defendant's contract is "closed-end credit" because it is one in which Defendant does not

reasonably contemplate repeated transactions, during the 12 month obligation period of the

contract. *See* 15 U.S.C. §1602(i); Regulation Z §226.2(a)(20); As previously stated (*supra*

**Section IV**), Plaintiffs make monthly payments to pay for their purchase of a one-year

membership, and are locked in to Defendant's contract for 12 months.  Therefore, Defendant's

have failed to provide the mandatory disclosures under Regulation Z 1026.18 *et seq; see*

Defendant's MOL, p. 35.


     **V**.      <u>**Defendant's violations of the HCSA, CFA, RISA and TILA Result in Violations of TCCWNA,  N.J.S.A. 56:12-14, *et seq*.**</u>

As correctly stated by Defendant, Plaintiffs claims under TCCWNA are premised on

whether Defendants contracts violated any clearly established legal right. *See* Defendant's MOL,

p. 37.  TCCWNA provides:

> No seller, or, creditor, lender or bailee shall in the course of his business offer to any consumer pr prospective consumer or *enter into any written consumer credit contract*... which includes any provision that violates *any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor*, lender, bailee as established by *State or Federal* law at the time the... consumer contract is signed... {emphasis added].  <u>United Consumer Financial Services v. Carbo</u>, 410 N.J. Super. 280 (2011) (citing N.J.S.A. 56:12-15).

---

[25] Plaintiff concedes that there is a typo in the First Amended Complaint. ¶4 should state "closed-end credit". Defendant seeks to capitalize on this typo as an "I gotcha". The Court is requested to take judicial notice of this error by Plaintiff and also that Count III at ¶106 clearly states "closed end credit."

Given Plaintiffs allegations against Defendant based on the New Jersey statutes (CFA, HCSA and RISA) as well as the Federal statutes (TILA and Regulation Z), Plaintiffs have made proper claims under TCCWNA. *Supra* **Sections II-IV**.

In **Section II** (*supra*), Plaintiffs articulate how Defendant's agreements are retail installment contracts and therefore covered by RISA. Although there is no private right of action, a violation of RISA causes Defendant to violate TCCWNA (which does have a private right of action). Contracts covered by RISA (such as Defendant's) are prohibited from charging a return check fee in excess of $20.00. *See* N.J.S.A. 17:16C-42. It is undisputed that Defendant's return check fee is $25.00. Accordingly, assuming the Court determines that the agreements are retail installment contracts, Plaintiffs' have pled that Defendant has violated RISA, and therefore, TCCWNA.

In **Section III** (*supra*) Plaintiffs explained how the HCSA and CFA require that Defendant state Plaintiffs' total payment obligation (N.J.S.A. 56:8-42[b]), and that Defendant fails to state this in its contracts. Furthermore, Plaintiffs showed how Ms. Kennedy was provided **<u>not one but two different contracts</u>** to sign on the very same day. In fact, for reasons unexplained by Defendant, she was required to sign a New York contract for her New Jersey membership (in addition to a New Jersey contract). This New York contract failed to include the required bond prerequisite under the HCSA. Accordingly, Defendant's violation of the CFA and HCSA is also a violation of TCCWNA.

Finally, in **Section IV** (*supra*), Plaintiffs showed how pursuant to TILA and Regulation Z, Defendant's failed to provide Plaintiffs with their total payment obligation (as more fully set forth in **Section III** under Plaintiff's HCSA and CFA analysis). Accordingly, Defendant's violations of TILA and Regulation Z were also violations of TCCWNA.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss the Amended Complaint which properly asserts claims against Defendant for violations of the HCSA, CFA, RISA, TILA and TCCWNA and, for such other, further and different relief as this Court deems just and proper.

Dated: April 7, 2014

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Joseph K. Jones*
Joseph K. Jones, Esq. (JJ-5509)
jkj@legaljones.com
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile


*/s/ Benjamin J. Wolf*
Benjamin J. Wolf, Esq. (BW-3338)
bwolf@legaljones.com
Law Offices of Joseph K. Jones, LLC
375 Passaic Avenue, Suite 100
Fairfield, New Jersey 07004
(973) 227-5900 telephone
(973) 244-0019 facsimile

*Attorneys for Plaintiff*

</div>